# REAL ESTATE CENTRAL, INC. *v.* KRAMER t/a PROMOTION AND RESEARCH MANAGEMENT

[No. 312, September Term, 1968.]

*Decided June 26, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Harry P. Anestos* for appellant.

*Joseph Montedonico,* with whom were *Edward C. Don-*

*ahue, William A. Ehrmantraut* and *James P. Gleason* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellee (Kramer), who styles himself a public relations consultant, sued appellant (REC) because it refused to pay him for his services. His declaration consisted of the eight common counts and a special count. The trial judge, Shure, J., sitting without a jury, entered a judgment in the amount of $1,574 in favor of Kramer against REC. Although Kramer's claim was for a larger amount he has not appealed.

Kramer and James S. Gibson met for the first time in November 1966. In January 1967 they discussed Gibson's plans to set up a real estate marketing business. As a result of that discussion and a few later ones Kramer was engaged by Gibson to render services as a public relations consultant. Kramer contends that he was to be paid $150 per day, $50 of which was to be paid upon the submission of a monthly bill; the balance ($100 per day) was to be paid six months later when the corporation to be formed (REC) would be a going concern. Gibson, on the other hand, contends that the $100 per day was to be paid only as a bonus if Kramer's proposals "were approved and carried out." In his oral opinion Judge Shure said:

> "There is substantial evidence to show that he did some work during January, February and March of 1967. * * * The exhibits in evidence show that he did make some contributions on some of the materials which he participated in, at least, that were in use and are still in use. The defendant company is still in business and apparently doing very well, since Mr. Gibson, the president of the defendant corporation states that they now have eight salesmen; and it is indeed fortunate that they are doing as well as they seem to be."
>
> * * *

"The Court having found that a prima facie case was made out will allow as follows: sixteen hundred dollars for sixteen days, less twenty-six dollars which is the amount that the defendant states he was required to pay for this error which is attributed without contradiction to the plaintiff."

## I.

REC assigns error in that Judge Shure refused to grant a motion for a judgment of non-pros on the ground that Kramer did not comply with its demand for particulars. We have set forth in full REC's initial defensive pleading:

"Defendant, Real Estate Central, Inc. by its attorney, Harry P. Anestos, in answer to the Declaration, pleads:

"1. The allegations of Paragraphs 1, 2, 3, 4, 5, 6, 7, 8 [the common counts], and 9 are denied.

"2. Further answering the Declaration, Defendant alleges that it never was indebted as alleged and that it never promised as alleged.

"3. Defendant further demands and requires the Plaintiff to file a Bill of Particulars setting forth a more specific and detailed statement of the alleged claim."

As pleadings go this, without doubt, is a rara avis. We shall assume that REC intended by the first and second paragraphs to plead the general issue. Judge Shure, quite properly, held that the demand for particulars was too late. In *White Automobile Co. v. Dorsey*, 119 Md. 251, 256 (1913), Judge Burke, for the Court, said:

"* * * The general rule is that in cases where the defendant is entitled to demand the particulars of the plaintiff's claim he should make the demand before pleading. 'By pleading to the declaration,' says Mr. Poe in his work on Practice, sec. 120, 'it is ordinarily held that he loses

or waives his right to exact the particulars, for by the very act of pleading he virtually admits that he has sufficient knowledge of the details of the plaintiff's cause of action.' "

## II.

In reviewing Judge Shure's finding that there was a contract between the parties and that Kramer was entitled to recover $1,574, we must keep in mind the rule that the judgment of the lower court, sitting without a jury, will not be set aside on the evidence unless it is clearly erroneous and that due regard will be given to the trial judge's opportunity to judge the credibility of the witnesses. Maryland Rule 886 a; *Abraham v. Moler*, 253 Md. 215 (1969). The weight of the evidence, of course, is for the trial judge to determine. *Abraham v. Moler, supra.* Our review of the record persuades us that there was before Judge Shure evidence which would support a finding that Kramer had about ten years' experience in the public relations field, that Gibson agreed to pay him $150 per day for his services, that he was to get $50 upon the submission of a monthly bill and that the remaining $100 per day would be paid six months later after the business was "off the ground," that Gibson paid him at the $50 rate but refused to pay at the $100 rate, and that Kramer was due $1,600 (less $26) for 16 days. There were other items before the court but they have no relevance here. In the circumstances, we think there could be no justification for our saying that Judge Shure's finding is clearly erroneous. See *Janowitz v. Slagle*, 250 Md. 140, 145 (1968); *Home News, Inc. v. Goodman*, 182 Md. 585, 588 (1944).

## III.

REC's final contention is that because the contract was made with Gibson it is not liable. Gibson formed the corporation in March 1967. He has been its president from the outset. It has long been held that when a "contract is made in the name or in behalf of the projected corporation, or is treated as a proposal to such corporation,

then in the absence of other controlling circumstances, acceptance of benefits under the contract justifies the inference that the corporation has accepted or adopted it." *Rosenberg v. Rolling Inn, Inc.,* 212 Md. 552, 555-56 (1957); *Maryland Apartment House Co. v. Glenn,* 108 Md. 377, 389 (1908); 18 Am.Jur.2d *Corporations* §§ 119-22 (1965). Kramer's services benefited REC and some of the things he worked up were used by it after its incorporation. His frequent contacts with Gibson continued without significant change. REC made use of his services after it came into existence and, in fact, made a change in the manner of his compensation.

We shall not disturb the judgment of the court below.

*Judgment affirmed.*
*Costs to be paid by appellant.*