FRISOEN, ET AL. *v.* TRAPP, ET AL.

[No. 425, September Term, 1969.]

*Decided July 8, 1970.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Robert Broyles,* with whom was *Nelson R. Kandel* on the brief, for appellants.

*Stanley B. Rohd,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellee William H. Muller, Jr.

No brief filed for appellee Leroy Trapp.

SINGLEY, J., delivered the opinion of the Court.

Some years ago, Russell Street, which traverses what is primarily an industrial area in southwest Baltimore,

was widened and rebuilt in order to provide access from the center of the city to the Baltimore-Washington Parkway. Russell Street is now a six lane highway, part of which is elevated over railroad tracks and streets which formerly intersected it. The accident which gave rise to this litigation occurred on one of the elevated portions of the street, and would appear to lend credence to the dogma that ordinarily bridges freeze before highways.

The appellants, who were plaintiffs below, Hosie Frisoen, Ella Smith and Constance Myers, were passengers in a small panel truck which had been leased by the appellee and defendant below, William H. Muller, Jr., trading as William H. Muller, Jr. Company, from Avis Rent-A-Car Systems, Inc. (Avis), and was being driven by the appellee-defendant, Leroy Trapp.

Suit was brought against Trapp and Muller for damages for the injuries sustained by the plaintiffs when the truck hit the railing of the Russell Street bridge.[1]

The case came on for trial in the Superior Court of Baltimore City (Sodaro, J.) without a jury. At the conclusion of the plaintiffs' case, the defendants moved to dismiss. When this motion was denied, neither Trapp nor Muller offered evidence. From a judgment in favor of Trapp and Muller, this appeal was taken.

From the frequently imprecise and sometimes conflicting testimony, the court could have found the following facts. Trapp had been employed by Muller for about 12 years on an irregular basis as a driver-helper, and was so employed on 23 December 1966, the day of the accident, driving the small panel truck which was involved in the accident. Muller had another, and larger truck, also rented from Avis, driven by another driver, Finney, which had to be returned to the Avis lot at Washington Boulevard and Monroe Street for the night.

At the end of the day, Trapp returned to Muller's place

---

1. Mrs. Katie Frisoen joined in the suit to assert a claim for loss of consortium. Avis, joined as a defendant, moved for summary judgment, which was granted.

of business where Ella Smith and Constance Myers were waiting. Trapp had agreed to take them to his mother's house in West Baltimore to pick up some Christmas tree ornaments. Muller suggested that Trapp wait until Finney returned and then follow Finney to the Avis lot, where Finney would take over the small truck and deliver Trapp and his friends to their destination. On their way to the Avis lot, Trapp and his companions picked up Hosie Frisoen, whom they encountered by chance on the street.

It would appear that it had begun to snow and drizzle while Trapp was waiting for Finney. The testimony is conflicting as to whether it was snowing when the truck reached Russell Street.

Trapp, called as an adverse witness by the plaintiffs, testified that his speed was about 45 miles per hour; that there was not too much traffic; that there was a car "about 20 feet, 50, something like that" in front of him, and that the car ahead put on its stoplights. When Trapp applied his brakes he said his car commenced to skid. He said:

> "The road wasn't slippery but the bridge was. I didn't realize that until I started skidding * * *. I stepped on my brakes, which I thought I was easing on them, and started skidding and Mrs. Myers said, 'Leroy, stop playing.' I said 'I am not playing I am trying to get this thing straight'. So we spun all the way around and headed for the bridge, and I stepped on the accelerator to stop the spin, because if we didn't and we hit the bridge right on as we did, we hit it on a glance."

The panel truck struck the bridge railing. Trapp's three passengers were injured, but he was not.

In an opinion delivered from the bench at the conclusion of the case, Judge Sodaro said:

> "The real issue is, was there negligence on the part of Trapp at the time of this accident.
> * * *

"I think it is clear in the record that all three plaintiffs in this case know very little, if anything, as to how the accident happened. The very best that I heard from them was they said. Leroy stop playing, and he said 'I am not playing at all.' Apparently he was not. And then, from that point on, they described the impact, how they were thrown out of the small truck and taken to the hospital and subsequently received treatment for their injuries. So, for all intents and purposes, the Court has to discount, really, any testimony from them as to how the accident happened.

"So, with regard to their testimony, the evidence of negligence coming from them is absolutely zero. All evidence, [of] the manner in which this truck was driven, comes from the defendant, Mr. Leroy Trapp, himself. He testified there had been no drinking that night at all. At least, he had not been drinking. He testified that he was in the act of going to the truck lot to deliver this truck and then to pick up the driver of the larger truck and then take them to their destination in the small truck.

"Be that as it may, the evidence is clear that this was a wet night and it had begun to snow. And even the plaintiff, Mr. Frisoen, himself testified that there wasn't enough snow to call anyone's particular attention. He said the streets were lightly covered. I take it from his testimony that there was no accumulation of snow to any degree. And then Mr. Trapp continues, he was going to take the route to the Russell Street bridge; he was going forty miles an hour. The Court finds that this was not excessive speed even under the conditions at that time. The traffic was moving normally but the bridge was slippery and it was while he was proceeding on the decline of the bridge that the car in front of

him suddenly put on its brake lights and he reacted, apparently properly and carefully, by putting on his brakes; the car skidded, and to prevent the car from going in the direction in which he was skidding he put on a little gas to avoid colliding with the car and the car slid and struck this bridge.

"It appears to the Court that there has been a lack of showing of negligence on the part of Trapp in the manner in which he was driving the small truck, even under the conditions of this bridge."

and entered judgment for the defendants.

In reviewing the trial court's findings and conclusions, it is settled that the judgment of a trial court, sitting without a jury, should not be set aside on the evidence unless it is clearly erroneous, Maryland Rule 886 a; *Real Estate Central, Inc. v. Kramer,* 254 Md. 290, 255 A. 2d 81 (1969); *Hamilton v. Smith,* 242 Md. 599, 219 A. 2d 783 (1966); *Bowers v. Eastern Aluminum Corp.,* 240 Md. 625, 214 A. 2d 924 (1965); *Space Aero Products Co. v. Darling Co.,* 238 Md. 93, 208 A. 2d 74 (1965), *cert. den.* 382 U. S. 843 (1965). The weight of the evidence is for the trial court to determine, *Abraham v. Moler,* 253 Md. 215, 252 A. 2d 68 (1969). If there is substantial evidence to support the trial court's factual conclusion, that finding must be reviewed in the light most favorable to the prevailing party below and the appellate court should accept that conclusion. *Space Aero Products Co. v. Darling, supra; Goodwin v. Lumbermens Mut. Cas. Co.,* 199 Md. 121, 85 A. 2d 759 (1952).

We see no reason why the judgment of the lower court should be disturbed.

*Judgment affirmed, costs to be paid by appellants.*