# GREENBELT CONSUMER SERVICES, INC. *v.* ACME MARKETS, INC.

[No. 264, September Term, 1973.]

*Decided July 18, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Michael A. Schuchat* for appellant.

*Robb Ross Hendrickson,* with whom was *J. Cookman Boyd, Jr.,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE, J., dissents and filed a dissenting opinion at page 231 *infra.*

This action, here on certiorari to the Circuit Court for Baltimore County, originated in the District Court of Maryland when the respondent and sublessor, Acme Markets, Inc., filed its statement of claim, which was designated as "an action of Contract-Landlord/Tenant," against the petitioner and sublessee, Greenbelt Consumer Services, Inc. By this suit, the landlord is not attempting to recover possession of the property, but rather $12,000 (amended to $15,000 in the Circuit Court) in unpaid rent alleged to be due it by the tenant who had already vacated the subleased premises located at 107 Glebe Road, Arlington, Virginia.

The basic and only issue to be determined here is whether the District Court, and, therefore, the Circuit Court on appeal, lacked subject matter jurisdiction in its fundamental sense to resolve the dispute presented.

The District Court was created in 1971 following the ratification by the citizens of this State of an amendment to Art. IV, § 1 of the Maryland Constitution. The limits of that court's jurisdiction were established simultaneously by the inclusion of § 41A in this same article, which in part provides, "[t]he District Court shall have the original jurisdiction prescribed by law." [1] In response to these constitutional mandates, the General Assembly enacted what is now codified as §§ 4-201, 4-401 and 4-402 of the Courts and Judicial Proceedings Article of the Code (1974) [2] which pertains to the civil jurisdiction of the newly established court. These sections provide:

"§ 4-201. Extent of jurisdiction.

The jurisdiction of the District Court extends to every case which arises within the state or is subject to the state's judicial power, and which is within the limitations imposed by this title or elsewhere by law. Exercise of this jurisdiction is subject to the restrictions of venue established by law."

"§ 4-401. Exclusive original jurisdiction.

Except as provided in § 4-402, and subject to the venue provisions of Title 6, the District Court has exclusive original jurisdiction in:

(1) An action in contract or tort if the debt or damages claimed do not exceed $5,000;

---

1. With the creation of the District Court, which began its operation on July 5, 1971, the existing offices of Justice of the Peace and Trial Magistrate, as well as the People's Courts, and the Municipal Court of Baltimore City were all abolished. The District Court today functions on a state-wide basis, and is the only trial court of limited jurisdiction in this State (considering the courts comprising the 8th Judicial Circuit — Baltimore City — as one) other than the specialized Orphans' Court.

2. Though the code reference here is to the Courts and Judicial Proceedings Article (1974) which was enacted by Ch. 2 of the 1973 First Special Session of the General Assembly, there is no substantial change from the provisions pertinent here formerly codified in Code (1957, 1966 Repl. Vol., 1971 Cum. Supp.) Art. 26, § 145 (c); similarly Code (1973 Repl. Vol.) Art. 26, § 145 (c).

(2) An action of replevin regardless of the value of the thing in controversy;

(3) A case of attachment on original process, if the sum claimed does not exceed $5,000;

(4) An action involving landlord and tenant, distraint, or forcible entry and detainer, regardless of the amount involved;

(5) A grantee suit brought pursuant to Article 21, § 14-109 of the Code; and

(6) A petition for injunction relating to the use, disposition, encumbrances, or preservation of property: (1) claimed in a replevin action, until seizure under the writ, or (2) sought to be levied upon an action of distress, until levy and any removal."

"§ 4-402. Exceptions.

(a) *Equity cases.* — Except as provided in § 4-401, the District Court does not have equity jurisdiction.

(b) *Land title cases.* — The District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property.

(c) *Declaratory judgment cases.* — The District Court does not have jurisdiction to render a declaratory judgment.

(d) *Concurrent jurisdiction cases.* — Except in a case under paragraph (2), (4), (5), or (6) of § 4-401, the plaintiff may elect to file suit in the District Court or in a trial court of general jurisdiction, if the amount in controversy exceeds $2,500.

(e) *Jury trial.* — (1) In a civil action in which the amount in controversy exceeds $500, a party may demand a jury trial pursuant to the Maryland District Rules.

(2) Except in a replevin action, if a party is

> entitled to and demands a jury trial, jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court. In a replevin action, if a party is entitled to and demands a jury trial, the District Court may conduct a hearing on the show cause order prior to issuing the writ, enforce an injunction issued by it in the action, and issue, renew, and receive returns upon the writ of replevin. The action shall be transmitted to the appropriate court only after the writ has been returned, stating that the property sought has been seized or eloigned; and the time for filing a notice of intention to defend has expired."

The respondent here contends, as it did with success in both the District Court and the Circuit Court, that although the sum it demands exceeds the $5,000 limitation imposed by § 4-401 (1) upon the jurisdiction of the District Court, nevertheless suit must be brought in that court because under § 4-401 (4) the District Court has exclusive original jurisdiction to consider claims for rent such as Acme's. In support of this, the respondent urges that the wording of the latter subsection clearly demonstrates that the General Assembly intended that all disputes arising between a landlord and his tenant, which grow out of this relationship, be originally instituted in the District Court without regard to either the amount involved, or whether the property is located within or without this State. We do not agree.

The principles which guide us in construing legislative enactments have been consistently applied by this Court for many years. Of these, the cardinal rule requires that the legislative intent be discovered and carried out. This purpose must be discerned from the words the Legislature chose to employ unless there exists an ambiguity or obscurity, in which case we need to look elsewhere. *M.T.A. v. Balto. Co. Revenue Auth.*, 267 Md. 687, 695, 298 A. 2d 413 (1973). This is so, in the absence of a constitutional defect, even if we

believe the policy of the statute to be unwise, harsh or unjust. *Flanagan v. Flanagan,* 270 Md. 335, 337-38, 311 A. 2d 407 (1973). Thus, in construing statutory language, we consider the words utilized in their natural and ordinary significance. However, if the phraseology employed has a doubtful meaning, this Court will examine the legislative intent so as to determine "the objectives and purposes of the enactment and the consequences resulting from one meaning rather than another . . . ." *Md. Medical Service v. Carver,* 238 Md. 466, 478, 209 A. 2d 582 (1965). Furthermore, if necessary in doing so, we will examine all parts of all pertinent legislative enactments which shed light on what is the true legislative purpose. *M.T.A. v. Balto. Co. Revenue Auth., supra; Hunt v. Montgomery County,* 248 Md. 403, 414-15, 237 A. 2d 35 (1968); *Amalgamated Ins. v. Helms,* 239 Md. 529, 535-36, 212 A. 2d 311 (1965).

With these principles in mind, we first look to the words of the statute itself to ascertain, if possible, what actions the General Assembly intended to encompass in § 4-401 (4), one of the subsections which give the District Court exclusive original jurisdiction. In doing so, we note that while what is meant by "an action involving landlord and tenant" may be subject to some reasonable dispute, it is crystal clear what was contemplated by specifying actions involving "forcible entry and detainer" and "distraint".

"Forcible entry and detainer" are those actions which may be brought under the authority of two British statutes, 15 Rich. 2, c. 2 and 8 Henry 6, c. 9, both of which essentially are still in force in Maryland (Alexander's British Statutes (Coe's ed. 1912) 196, 188; *Roth v. State,* 89 Md. 524, 43 A. 769 (1899); *Clark v. Vannort,* 78 Md. 216, 219, 27 A. 982 (1893)), by one who seeks to recover possession of his premises from another who has either forcibly entered and detained them, or has peacefully entered and then forcibly detains the property. These rights of action have been modified by Code 1974, § 8-402 (b) of the Real Property Article to include a remedy by which a landlord may recover possession of leased premises from a tenant "Holding over" without force,

and by delineating the procedure for bringing any one of them.[3]

Distraint itself was not an action at common law but a remedy. *A. Thomas, Procedure in Justice Cases* 115 (1906). However, Ch. 915 of the Acts of 1965 (now codified as Code 1974, §§ 8-301 to -332 of the Real Property Article) both declared it to be an action at law and set forth the procedure to be followed in employing it. Obviously, § 4-401 (4) refers to these provisions of the code when it utilizes the words "an action involving . . . distraint."

Acme does not contend that its suit is either one for forcible entry and detainer or one for distraint. Instead, it relies on the phrase "an action involving landlord and tenant" to support the District Court's jurisdiction in this case. However, although what legal action or actions the Legislature contemplated by the use of this phrase is not as clear as what actions it intended by the use of the other two, we believe, nevertheless, the answer to the respondent's contention can still be found, to a substantial extent, in the words of the statute itself. That this is so can perhaps be best understood if we first point out what the law does not say. Section 4-401 (4) does not speak of "an action involving *a* landlord and *a* tenant"; nor does it read "an action involving *the landlord-tenant relationship*." We believe that the Legislature consciously chose not to employ either of these wordings for the reasons which follow.

If the statute was written in accord with the first variation, the District Court's jurisdiction would be practically limitless. We say this, as under this first paraphrase, any action between a landlord and a tenant, no matter its scope or the amount involved, would have to be brought in the District Court. This alternative must be rejected as "we should assume that the legislative body

---

3. We point out that once the District Court has jurisdiction over a possessory action of the type described in § 8-402 (b) or the British statutes, ancillary to this, a landlord may obtain damages incurred when the tenant holds over as distinguished from bringing an action for damages alone in a separate suit "in any court having jurisdiction over the amount in issue." Code 1974, § 8-402 (a)(2)(v) of the Real Property Article.

intended to reach a reasonable, rather than an unreasonable result . . . ." *Swarthmore Co. v. Kaestner,* 258 Md. 517, 527, 266 A. 2d 341 (1970).

While it is true that the respondent does not contend that we go so far as to adopt the first paraphrase, the second is precisely the reading which its argument calls for. This interpretation would include a suit for rent, a tort action by a tenant for a landlord's failure to repair, or any other cause of action which springs from the landlord-tenant relationship. However, if this were the meaning of the phrase "an action involving landlord and tenant," there would have been no reason to go further and list in that same subsection actions for distraint, or forcible entry and detainer, as they would necessarily have been encompassed in the respondent's paraphrase of this portion of the law.

Having eliminated these two constructions, we now turn to the one which, we believe, is consistent with both the words employed and the true intention of the Legislature. By the phrase "an action involving landlord and tenant," it is apparent to us that the General Assembly was denoting a particular form of action, just as it had when it mentioned "distraint" and "forcible entry and detainer." The question therefore becomes, what is this "landlord and tenant" action? In our estimation, the General Assembly intended to encompass within § 4-401 (4) only those possessory *in rem* or *quasi in rem* actions that provided a means by which a landlord might rapidly and inexpensively obtain repossession of his premises situated in this State or seek security for rent due from personalty located on the leasehold. Traditionally these actions have been within the exclusive original dominion of justices of the peace or courts of limited jurisdiction of this State, since these judicial institutions have always been particularly well equipped to handle cases of this type, being consistently available and lacking much of the formality which customarily has been a part of the circuit court's procedures. These possessory law suits are those discussed above in addition to the action described in Code 1974, § 8-401 of the Real Property Article

(titled "Failure To Pay Rent"), which we determine to be the one that the General Assembly refers to in § 4-401 (4) as "an action involving landlord and tenant." We reach this conclusion partly because historically, when this type of action was first authorized by local legislation in Baltimore City, and then later adopted on a statewide basis (with the exception of Allegany County) by the General Assembly in 1937,[4] it was commonly referred to as the "landlord and tenant summary ejectment action" or the "landlord and tenant summary complaint action." These enactments permit the landlord to regain possession of his premises upon default in the payment of rent by the tenant, while at the same time they abolish distraint for all leases of less than three months duration.

We specifically hold, therefore, that the actions encompassed by § 4-401 (4) of the Courts Article, in which the District Court is given exclusive original jurisdiction regardless of the amount involved, refers to landlord and tenant actions as authorized by § 8-401 of the Real Property Article; distraint actions, as authorized by §§ 8-301 to -332 of the Real Property Article; and actions for forcible entry and detainer, including those for a tenant holding over, as authorized by the British statutes and § 8-402 (b) of the Real Property Article. This conclusion is reinforced by the significant fact that each of these Real Property Article provisions specifically mandates that the actions described therein are to be brought in the District Court where the property is situated.

It follows from what we have said that the District Court of Maryland is without jurisdiction to render a judgment in excess of the $5,000 limit when it is instituted in a contract claim independent of one of the possessory actions to which we have already referred. Accordingly, the District Court, in this case, was without subject matter jurisdiction in the

---

4. For a brief discussion of the Baltimore City local legislation see *A. Thomas, Procedure in Justice Cases,* 39 (1906). The State statute was adopted with the enactment of Ch. 529 of the Acts of 1937. By subsequent legislation, it has been made applicable also to Allegany County.

fundamental sense to render the decision it did, and its judgment must be vacated.

> *Judgment of the District Court of Maryland as affirmed in the Circuit Court for Baltimore County vacated and the case is remanded to the District Court for the entry of a judgment in favor of the petitioner, Greenbelt Consumer Services, Inc., for costs.*
>
> *Costs in this Court to be paid by the respondent, Acme Markets, Inc.*

*Eldridge, J., dissenting:*

The General Assembly, in what is now codified as Maryland Code (1974), § 4-401 (4) of the Courts and Judicial Proceedings Article, granted to the District Court exclusive original jurisdiction in "An action involving landlord and tenant . . . regardless of the amount involved." The majority opinion construes this grant as if the word "possessory" were inserted in the clause. However, the Legislature did not so qualify the language which it used. With all deference, I believe that the majority opinion ignores the principle that the words used in a statute are to be given their ordinary and natural meaning. *Grosvenor v. Supervisor of Assessments*, 271 Md. 232, 237-238, 315 A. 2d 758 (1974); *Baltimore County v. White*, 235 Md. 212, 218, 201 A. 2d 358 (1964).

The phrase "landlord and tenant" is not unique to the statute delineating the jurisdiction of the District Court. It is the name given to Art. 53 of the Code and to Title VII of Art. 21 of the Code. The provisions of Art. 53 and Art. 21, Title VII, regulate and deal with the many aspects of the landlord and tenant relationship. The principal subject dealt with, in one manner or another, is the tenant's obligation to pay rent. I can think of nothing which is more peculiarly

identified with the "landlord and tenant" relationship than a suit for rent due.

By employing the phrase "[a]n action involving landlord and tenant," the Legislature intended that the District Court serve as the basic landlord-tenant court, to handle the typical disputes between landlords and tenants growing out of the landlord-tenant relationship. And the most typical dispute of this nature that I could imagine is the failure of the tenant to pay rent. In my view, both the district judge and the circuit judge correctly construed the statute. I would affirm.