562 A.2d 707

**Siu Leung SHUM**

v.

**D.L. GAUDREAU.**

**No. 2, Sept. Term, 1989.**

Court of Appeals of Maryland.

Aug. 31, 1989.

Charles J. Muskin, Glen Burnie, for petitioner.

No argument on behalf of respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

We here consider the res judicata effect of a landlord's action for repossession of premises and unpaid rent on a subsequent action by the landlord to recover for the cost of repairing damage done to the leased premises during the term of the tenancy. The issues presented arise from a dispute between respondent D.L. Gaudreau ("Landlord") and petitioner Siu Leung Shum ("Tenant"). Landlord leased property to Tenant on 18 September 1985. The

rented parcel, 1459 Fairfield Loop Road in Anne Arundel County, Maryland, was a residence. But Tenant, owner of an Annapolis-area restaurant, did not rent the property to use as a home. Instead, he rented the property because it was "close to work, [to use] as an office, sometimes I would take an afternoon break ... there."

During the first year of the lease, Tenant decided that the property was not suitable as an office and used the property as a dormitory for some of his restaurant employees. The lease was renewed for a second year (for the year ending 30 September 1987) on 5 September 1986.

During the summer of 1986, Tenant complained to Landlord about the house's lack of water supply. In response, a new well was drilled. A water conditioner system was installed in October 1987.[1] In June 1987 Landlord wrote a letter to Tenant advising the latter that the home was in "deplorable condition due to the number of people" living there. Landlord requested that the home be cleaned and repaired. On 2 September 1987 and throughout that month and early October, Landlord made extensive repairs to the property. Tenant did not pay the September rent and vacated the premises some time between 24 and 30 September.

On 22 September 1987, pursuant to Maryland Code (1988 Repl.Vol., 1988 Cum.Supp.), Real Property Article, § 8–401, Landlord brought an action against Tenant in the District Court of Maryland sitting in Anne Arundel County. He sought repossession of the property and a judgment for one month's rent. On 29 September he obtained that relief, including personal judgment against Tenant for $550, the rent found to be due.

That case is not the one we have before us. The present matter arises from a contract action, instituted by Landlord in the District Court of Maryland sitting in Anne Arundel

---

**1.** Apparently the first well could not provide sufficient water to the home because, at various times, as many as nine of the Tenant's employees were residing there.

County on 13 October 1987. There, Landlord alleged that Tenant had caused damage to the property in the amount of $9,200.

This amount allegedly due by Tenant was based on damage to the floors in the living room and kitchen, damage to walls of the home, to the stove and refrigerator, and to doors in the interior of the home; required pest extermination; and the cost of hauling furniture abandoned by Tenant. Landlord also requested reimbursement for costs, incurred both before and after Tenant's departure, for lawn and gardening services (because of the Tenant's failure to maintain the lawn as required by the lease) and for septic tank service. Finally, the Landlord requested reimbursement for the new well and water conditioner system. The District Court, after a trial, awarded Landlord $6,500. It gave no explanation of the basis for liability or the computation of damages. Tenant appealed to the Circuit Court for Anne Arundel County, questioning the sufficiency of the evidence to support certain damages claimed by Landlord and asserting that the contract action was barred by res judicata.

After a hearing on the record made in the District Court, the circuit court reversed and remanded the case to the District Court for a new trial. The circuit court held that the District Court had failed to set forth adequate findings of fact or law from which the circuit court could "understand what weight was given by the trier of fact to the items [of damage] or the values of same; nor was there any reasoning in law as to the ultimate conclusions." With regard to res judicata, however, the court held that there was no basis for the argument because the earlier action for rent and repossession, pursuant to § 8–401, and the subsequent contract action for damages to the property "are two separate causes of action." We granted certiorari to determine whether the action instituted on 13 October 1987 is barred by res judicata and if it is not, whether the circuit court was correct in remanding the case to the

District Court for a new trial. 315 Md. 223, 554 A.2d 351 (1989).

## I.

In *MPC, Inc. v. Kenny,* 279 Md. 29, 367 A.2d 486 (1977), we stated the rule of res judicata:

"The doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the *same cause of action,* and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety *could have been litigated* in the first suit...."

279 Md. at 32, 367 A.2d at 488–489 (quoting *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961)) [ellipsis and emphasis added in *MPC, Inc.*]. *See generally* Restatement (Second) of Judgments §§ 17, 18 (1982). We are concerned here with the concept of claim preclusion. *See generally Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 489–490, 525 A.2d 232, 233 (1987).[2] We must first determine whether the contract action instituted by Landlord on 13 October 1987 is the "same cause of action" as the one he instituted pursuant to § 8–401 of the Real Property Article on 21 September 1987.

### A.

In *Bilbrough,* Judge Rodowsky, writing for the Court, discussed at length the test to be used in determining whether two claims are the same cause of action. We approved of the "transaction" approach found in § 24 of the Restatement (Second) of Judgments (1982).[3] 309 Md. at 499, 525 A.2d at 238. Section 24 explains:

---

2. More recently, we have considered certain aspects of the res judicata doctrine in *Cassidy v. Board of Education,* 316 Md. 50, 557 A.2d 227 (1989), and *Murray International v. Graham,* 315 Md. 543, 555 A.2d 502 (1989).

3. This result was reached because of our concern that the test used previously—the same evidence test—"may improperly narrow the

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

This approach is proper when " 'parties have ample procedural means for fully developing the entire transaction in the one action....' " *Bilbrough*, 309 Md. at 499, 525 A.2d at 238 (quoting Restatement (Second) of Judgments § 24, comment a). As a result of our decision in *Bilbrough*, " '[t]he law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so.' " *Id.*

## B.

We apply the factors listed in § 24(2) to the instant case. At the core of both this action and the earlier one is the lease. This contract to a large extent determines the rights and duties of both parties. Breaches of the lease by the Tenant—failure to pay rent and failure to perform other covenants of the lease [4]—gave rise to both actions. Certain-

---

scope of a 'claim' in the preclusion context." *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 494, 525 A.2d 232, 236 (1987).

**4.** In pertinent part, the lease provided:
THE SAID TENANT AGREES:
  1. To pay promptly the rent as herein provided without any deduction whatsoever and to pay the rent when due. If the rent is

ly then, the "facts are related in time, space, [and] origin." Also, the two actions could easily form a convenient trial unit because they both arise from the same contract. This conclusion is consistent with our prior holdings in cases involving two claims arising out of a single contract.

For example, in *Rosenstein v. Hynson*, 157 Md. 626, 147 A. 529 (1929), the plaintiff sued and received a judgment against the defendant for a portion of an amount owed under a contract for the sale of a piano. The plaintiff then brought a replevin action to recover the piano because of the remaining unpaid installments. The Court held that

> In suing for a part only of the installments in arrears, when he was entitled to sue for all, the plaintiff disregarded the sound and settled rule that a fully accrued cause of action for the breach of a single contract must not be subdivided for the purposes of separate suits against the same party. The object of the rule is to protect a defendant from the vexations and burdens inci-

---

paid more than 5 calendar days late, Tenant will pay as additional rent a sum equal to 5% of the amount of delinquent rent due....

\* \* \* \* \* \*

7. At the end of said term, or any renewal thereof, to surrender said premises to said Owner in as good condition as when received, except for any damage caused by ordinary wear and use thereof; and Tenant further agrees to surrender said premises free and clear of all furniture and debris and to return all keys to the leased premises to the Owner.

\* \* \* \* \* \*

IT IS FURTHER AGREED BY THE PARTIES HERETO:

\* \* \* \* \* \*

2. Except as may be hereinafter provided, Tenant agrees to pay for all repairs and renovations to the leased premises during the term hereof and any renewal thereof. Owner shall maintain and keep in repair the roof and exterior walls of the leased premises. The replacement of any cracked or broken windows or other glass shall be the responsibility of Tenant. Any sum payable hereunder by Tenant shall be due and collectible as additional rent for the leased premises.

\* \* \* \* \* \*

5. Additional provisions, if any, are as follows: _____
Tenant is to maintain well and water. Lawn is to be kept at two inch max. height.—include raking of dead grass.

dent to a duplication or multiplication of actions to enforce a liability for which one suit would be sufficient. The consequence of a violation of the rule is that a judgment recovered for part of the accrued indebtedness sued for separately may be pleaded to a suit for the residue of the claim, which is treated as being merged in the recovery procured in the first litigation.

157 Md. at 628, 147 A. at 529.

In *Olmstead v. Bach,* 78 Md. 132, 27 A. 501 (1893), an employee entered into an employment contract to work for one year and receive a weekly salary for his services. Two months into the term, the employer refused to allow the employee to work, thus breaching the contract. Nine days after the breach, the employee sued for one week's pay and received a judgment for that amount. The employee then instituted a second action for the balance of the wages due under the contract.

The Court noted that the contract was indivisible, and that the parties expected the contractual relationship to continue unbroken for one year, rather than to be a weekly or at-will arrangement. 78 Md. at 144, 27 A. at 503. Thus, it was held that the employee should have maintained one action for the breach of the contract—the second action on the contract was barred. *Id.* at 151, 27 A. at 505. Other cases hold similarly. *See, e.g., Mildred Davis, Inc. v. Hopkins,* 224 Md. 626, 169 A.2d 450 (1961) (sale of goods); *Ex Parte Carlin,* 212 Md. 526, 129 A.2d 827 (1957) (second suit for fees from legal services rendered to estate barred); *Dugan v. Anderson,* 36 Md. 567 (1872) (employment contract); *see also Dill v. Avery,* 305 Md. 206, 502 A.2d 1051 (1986) (res judicata bars plaintiff from splitting tort action); *Frontier Van Lines v. Maryland B. & Tr. Co.,* 274 Md. 621, 336 A.2d 778 (1975) (res judicata bars plaintiff from splitting action against bank for breach of duty).

Under the principles stated in *Bilbrough,* then, claim preclusion would seem to bar Landlord's second action against Tenant for at least two reasons: first, if treatment of all the claims as a unit conformed to the parties' expecta-

tions or business usage; and second, if the initial District Court action allowed Landlord a "procedural means for developing the entire transaction." We turn to the question of "procedural means."

### C.

Included within the jurisdiction granted the District Court is "exclusive original civil jurisdiction in ... [a]n action involving landlord and tenant, ... regardless of the amount involved...." Md.Code (1984 Repl.Vol.), Cts. & Jud.Proc. Art., § 4–401(4). In *Greenbelt Consumer v. Acme Mkts.,* 272 Md. 222, 230, 322 A.2d 521, 526 (1974), we held that a summary ejectment proceeding brought pursuant to § 8–401 of the Real Property Article is one of the landlord and tenant actions contemplated by § 4–401(4) of the Courts Article. That is what Landlord's first action was, and as such, it was within the exclusive original jurisdiction of the District Court.[5]

As we have pointed out, Landlord included in his summary ejectment case both a demand for repossession of the premises and a claim for one month's rent. Section 8–401(c)(2) authorizes the District Court, if it finds any rent actually due and unpaid, to "enter a judgment in favor of the landlord for possession of the premises" and to "give judgment in favor of the landlord for the amount of rent determined to be due" if the landlord made sufficient ser-

---

**5.** The aggregate amount involved in both cases brought by Landlord was less than $10,000, and thus was within the general monetary limit of District Court civil jurisdiction. Courts Article, § 4–401(1). Therefore, we are not faced with any problem that might have arisen if one (or the aggregate) of those claims had exceeded that limit. *See Greenbelt Consumer v. Acme Mkts.,* 272 Md. 222, 322 A.2d 521 (1974); *see generally* 1 G. Liebmann, *Maryland Practice: District Court Law and Practice* § 96 (1976). We note, however, that our decision in *Greenbelt Consumer* did not address a case brought pursuant to § 8–401 of the Real Property Article, where rent in excess of $10,000 was requested, in addition to repossession of premises. *Greenbelt Consumer* involved an action for rent only, with the amount of $12,000 being claimed in the District Court. 272 Md. at 223, 322 A.2d at 522.

vice on the tenant. *See generally University Plaza v. Garcia*, 279 Md. 61, 367 A.2d 957 (1977); D. Bregman & G. Everngam, *Maryland Landlord–Tenant Law, Practice and Procedure* ch. 9 (1983) (hereinafter Bregman); 2 G. Liebmann, *Maryland Practice: District Court Law and Practice* § 786 (1976). The problem here is whether Landlord's second claim—the claim for contract damages—properly could be joined with the summary ejectment case.

We explained in *Greenbelt Consumer* that summary ejectment is one of several "possessory *in rem* or *quasi in rem* actions that provide[ ] a means by which a landlord [may] rapidly and inexpensively obtain repossession of his premises...." 272 Md. at 229, 322 A.2d at 525. Because the relief available in a summary ejectment action is limited to a judgment for repossession of premises and rent actually due, Landlord could not have joined a claim for general contract damages claim in that proceeding.

Statutory procedures for summary ejectment, such as § 8–401 of the Real Property Article, were enacted as alternatives to the common law action of ejectment in order to allow landlords expedited means of regaining possession of leased premises. The common law action of ejectment was expensive and often "fraught with procedural complexities and delays." R. Schoshinski, *American Law of Landlord and Tenant* § 6:10, at 409 (1980) (hereinafter Schoshinski). In discussing an Oregon statute, the Supreme Court, in *Lindsey v. Normet*, 405 U.S. 56, 73, 92 S.Ct. 862, 874, 31 L.Ed.2d 36, 50 (1972), noted that "[s]peedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession" that might occur in a common law ejectment action. *See also Pernell v. Southall Realty*, 416 U.S. 363, 369–376, 94 S.Ct. 1723, 1726–1730, 40 L.Ed.2d 198, 205–209 (1974) (discussing District of Columbia statute); *Velazquez v. Thompson*, 451 F.2d 202, 204 (2d Cir.1971) (discussing New York statute); *Prevedini v. Mobil Oil Corp.*, 164 Conn. 287, 292, 320 A.2d 797, 800 (1973); *see*

*generally* 2 R. Powell, *The Law of Real Property* ¶ 246[3] (rev.1988); Schoshinski, §§ 6:10–6:20.

To accomplish the objective of speedy adjudication, our General Assembly, like legislatures in other states, limited a summary ejectment action to repossession of premises and rent actually due. The determination of the amount of rent due is often (although not always) a relatively straightforward calculation, and its recovery is not inconsistent with simple and speedy adjudication. It would be contrary to the purpose of the summary ejectment statutory scheme to allow recovery of general contract damages, with possible complexities of proof, in a summary ejectment action.

Because of the limited scope of § 8–401, it may well be that neither the parties' expectations nor business usage would support treating as a unit both rent and other contract claims arising out of the lease. Obviously, moreover, § 8–401 would not afford "ample procedural means for fully developing the entire transaction." The parties are not given the capacity to present their "entire controversies" in the summary ejectment case. Therefore, there ordinarily would be no claim preclusion as to the second action.

> The general rule against splitting causes of action does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant [if]:
>
> \*     \*     \*     \*     \*     \*
>
> (d) The judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory ... scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim....

Restatement (Second) of Judgments, § 26(1).[6] *See also 650 Park Ave. Corp. v. McRae*, 665 F.Supp. 228, 232–233, 233 n.

---

**6.** Although based on a statutory hypothesis that is inconsistent with Maryland statute and case law, Illustration 5 explaining the application of § 26(1)(d) furnishes a helpful example:

2 (S.D.N.Y.1987); *cf. Jackson v. United States Postal Serv.*, 799 F.2d 1018, *reh'g denied*, 803 F.2d 717 (5th Cir. 1986) (Restatement (Second) of Judgments § 26(1)(d) does not apply because federal district court had jurisdiction to enter judgment for rent in first action).[7]

But what if, as Tenant argues, the contract damages were to be treated as rent under the lease involved in this case?

## D.

Under the lease, Tenant agreed "to pay for all repairs and renovations to the leased premises during the term hereof" and it was further agreed that "[a]ny sum payable ... by Tenant [under the provision just quoted] shall be due and collectible as *additional rent for the leased premises*" [emphasis added]. *See* note 4, *supra*.

There are cases holding that rent, for purposes of summary remedies, may be defined to include readily ascertainable items such as taxes and water charges. *See, e.g., Irving Trust Co. v. Burke*, 65 F.2d 730 (4th Cir.1933) (applying Maryland law to a commercial lease). Other authorities go further and indicate that rent may be defined to be whatever the parties intend it to be. *M.E. Blatt Co. v.*

---

For nonpayment of rent, landlord A brings a summary action to dispossess tenant B from leased premises. A succeeds in the action. A then brings an action for payment of the past due rent. The action is not precluded if, for example, the statutory system discloses a purpose to give the landlord a choice between, on the one hand, an action with expedited procedure to reclaim possession which does not preclude and may be followed by a *regular action for rent*, and, on the other hand, a regular action combining the two demands.

7. Tenant argues, nevertheless, that Landlord, having chosen to sue in a court of limited jurisdiction, cannot bring another claim arising from the same transaction. *See* Restatement (Second) of Judgments § 24, comment g. For reasons we have stated, we disagree. Moreover, comment g speaks of actions "voluntarily" brought in a court of limited jurisdiction. To obtain the benefit of § 8–401's expedited procedure, Landlord had to bring his summary ejectment action in District Court. That filing might not be considered "voluntary" for purposes of the comment.

*United States,* 305 U.S. 267, 277, 59 S.Ct. 186, 189, 83 L.Ed. 167, 170 (1938). *See also, e.g., Chicago Hous. Auth. v. Bild,* 346 Ill.App. 272, 104 N.E.2d 666 (1952) (in forcible entry and detainer proceeding, rent, as defined in residential lease, included such items as cost of electricity and heat); *Fargo Realty, Inc. v. Harris,* 173 N.J.Super. 262, 414 A.2d 256 (1980) (in summary dispossession proceeding, rent, as defined in residential lease, included cost of repairing tenant-inflicted damage); *Knepper v. Rothbaum,* 104 Misc. 554, 172 N.Y.S. 109 (N.Y.Sup.Ct.1918) (same); *In re Carol Janet, Inc.,* 49 B.R. 847 (Bankr.E.D.Wis.1985) (cost of leasehold improvements were rent under commercial lease providing that all sums payable under lease by tenant to landlord were rent). On the other hand, there is support for the proposition that "what constitutes rent is a question of law and not of intention." 3 H. Tiffany, *The Law of Real Property* § 879 at 531 (B. James, 3d ed. 1939).

To the extent this Court has addressed the issue, it has adopted an intermediate position. In *University Plaza v. Garcia,* 279 Md. at 67, 367 A.2d at 961, we decided that at least under some circumstances the parties' intention could determine what was rent:

> We think that it is consistent with the rationale of our prior opinions ... that between a landlord and a tenant, insofar as their respective rights and obligations are concerned in their relationship each with the other, charges which may be definitely ascertained, paid by the tenant, and going to his use, possession and enjoyment of rental commercial premises, are rent if such was the intention of the parties.[8]

We limited that holding, however, "to premises leased for commercial purposes as distinguished from residential

---

**8.** *See also Theatrical Corp. v. Trust Co.,* 157 Md. 602, 146 A. 805 (1929) (under commercial lease, taxes payable by tenant, water charges, and insurance premiums treated as rent) and *Feldmeyer v. Werntz,* 119 Md. 285, 86 A. 986 (1963) (under commercial lease, taxes payable by tenant treated as equivalent to rent).

use[,]" expressly leaving open, for determination on a case-by-case basis, "the question whether similar charges under a lease of residential property would be rent." *Id.* at 67, 367 A.2d at 961.[9] The question we left open in *Garcia* is one we need not address today. We have before us a lease that has been treated as one for commercial purposes.

To be sure, the lease purports to be for residential premises. Among other things, it is on a printed form captioned "Standard Dwelling Lease." And it prohibits Tenant from using the premises or any portion of the premises "for any purpose other than as an orderly private residence...." Initially, Tenant used the property essentially as a business office, not as a residence. Later, it was used as a dormitory for up to eight or nine of the Tenant's restaurant employees—a fact known to Landlord or his representatives. The District Court, in the second action, found that the lease "was not written for the average little suburban family but it was written for another businessman." This was at least an implicit finding of the *de facto* commercial nature of the lease and that finding is not questioned on this appeal, nor

---

9. "The primary significance in classifying various monetary obligations as rent is to give the landlord the benefit of special landlord remedies in the event of default, such as summary dispossession of the tenant...." R. Schoshinski, *American Law of Landlord and Tenant* § 5:35 at 338 (1980). In *University Plaza v. Garcia,* 279 Md. 61, 67, 367 A.2d 957, 961 (1977), we expressed some concern about undue use of this advantage when we explained why we limited that holding to commercial leases: "[I]n the negotiation of a lease of premises to be used for a commercial enterprise there is little likelihood of successful overreaching on the part of the landlord and of coerced adhesion on the part of the tenant, so that the final agreement would fairly represent the actual intention of the parties." Aside from this sort of problem, there may be other policies that would not allow free rein in the definition of rent to the parties to a residential lease. For example, § 8–211(e) of the Real Property Article imposes "an obligation upon landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life, health or safety of occupants." It is doubtful that a residential lease could characterize as "rent" the cost of repairing or eliminating such a condition or defect (other than one caused by the tenant), thereby shifting the burden of correcting it from landlord to tenant.

was it questioned below.[10]

■ For purposes of *Garcia* analysis, then, we have a commercial lease. Under that case's test, costs defined as rent may be treated as such if they are reasonably ascertainable .and if they were incurred for Tenant's "use, possession and enjoyment" of the premises. 279 Md. at 66, 367 A.2d at 960. That phrase means "work ... performed on Tenant's behalf, ... to adapt the premises to the. use permitted by the lease." *Id.* at 68, 367 A.2d at 961.

At first blush, the cost of drilling the new well seems to fit this test. The new artesian well was needed to supply water to Tenant's eight or nine employees; the old "dug" well was insufficient for that purpose. Tenant complained about the insufficiency, and Landlord, aware of the dormitory use of the premises, had the new one drilled. Clearly, the well was for Tenant's "use, possession and enjoyment" of the premises, and its cost was reasonably ascertainable. Its cost appears much like the costs that were treated as rent in *Garcia*—capital improvements to a store building, done at the tenant's behest, to make the structure suitable for tenant's purposes. But there is a distinction between that case and this.

The lease in *Garcia* explicitly required the landlord to construct the leased premises for tenant's use and occupancy, in accordance with certain architectural plans and specifications. Some of the work was to be done "on the Tenant's behalf;" for which Tenant was to pay, and its costs were to be treated as additional rent. 279 Md. at 63–64, 367 A.2d at 958–959. But here what is to be treated as additional rent is not so specifically identified. Rather, it is defined by the general language "repairs and renovations to the leased premises during" the term of the lease.

---

10. The question of whether § 8–211 of the Real Property Article, note 8, *supra,* might nevertheless apply because the property was "leased for the purpose of human habitation," § 8–211(c), is not before us. Neither is the question of whether this lease was a residential one for any of the purposes of subtitle 2, Title 8, Real Property Article.

The well, it is true, was installed during the term of the lease. But we find ourselves unable to fit the drilling of an entirely new well, at a different location from and of a different capacity than the old one, within the phrase "repairs and renovations."

At common law a tenant had a duty to keep the leased premises in repair. This obligated the tenant "to make ordinary repairs as distinguished from structural repairs or changes." Schoshinski § 5.20 at 278; 1 H. Tiffany, *The Law of Landlord and Tenant* § 113 at 745 (1910) (hereinafter Tiffany). The duty has been interpreted as demanding no more than that the tenant keep the premises "windtight and watertight." *Katz v. Williams*, 239 Md. 355, 360, 211 A.2d 723, 726 (1965); Tiffany, § 113 at 747. The common law duty may be modified by specific undertakings in a lease, but a covenant like the one here, involving "repairs and renovations," requires the tenant to do no more than that demanded by the common law duty. *Middlekauff v. Smith*, 1 Md. 329, 339–340 (1851). Whether the contractual duty to surrender the premises in good condition, except for reasonable wear and tear, demands more or less than a covenant to repair, the former surely does not require installation of a wholly new well. *Clark & Stevens v. Gerke*, 104 Md. 504, 65 A. 326 (1906); *see* Bregman, Ch. 2 at 23. Under the lease before us in this case, Tenant had no obligation to install a completely new well. Since the installation of the artesian well was not included within Tenant's covenant respecting "repairs and renovations," the cost of that work could not be treated as additional rent within the lease's definition. As a consequence, Landlord could not have included that claim in the summary ejectment action; the claim is not barred by res judicata.[11]

---

11. On the other hand, Landlord could not have properly asserted this claim in the second or contract action. Whether Landlord had a duty to drill the artesian well we need not decide. The fact is, aware of the water problem at the premises, and of the dormitory use that caused it; aware that Tenant might not renew the lease unless the lack of water was corrected; Landlord elected to drill the artesian well. He

■ There are other items claimed by Landlord that are equally clearly not barred by res judicata. Some of the charges for grass cutting, although incurred during the term of the lease, were expressly made Tenant's obligation, but *not* characterized by the lease as additional rent. Whatever scope the parties may have to define certain items as rent, this item was not so defined. Since it cannot be treated as rent, it could not have been asserted in the summary ejectment proceeding. As a consequence, it is not barred by res judicata.

■ On the other hand, the charges for septic tank maintenance fall within the "repairs and renovations" clause. Some of them were made within the term of the lease, were for Tenant's use and enjoyment, and are deemed additional rental. These would be barred by claim preclusion.[12] Unfortunately, the record does not enable us to separate septic tank repairs made during the term of the lease from those made thereafter. This is a factual determination that the District Court must make (with, if necessary, additional testimony) on the remand we shall order. This determination will disclose what portion of the septic tank charges is barred by claim preclusion.

■ Finally, it appears that much of the amount claimed by Landlord in the instant action was for work required to

---

neither insisted that Tenant limit occupancy of the property in accordance with the terms of the lease nor did he, so far as the record discloses, extract from Tenant any agreement as to payment for the new well. Landlord undertook to make a substantial improvement to the property, one for which Tenant was not required to pay either by virtue of common law or under the terms of the lease. Under those circumstances, Tenant cannot be held liable for the costs. The same is true with respect to the water conditioning system. Although it was installed after Tenant had left the premises, the record makes clear that it was made necessary by the new well and was an integral part of the water supply system. Indeed, it is possible that the District Court rejected these claims on the ground that they were capital improvements—a defense raised by Tenant in that court.

12. We reiterate that we do not have before us the extent to which § 8–211 of the Real Property Article might prevent a landlord from treating costs of septic tank maintenance as additional rent.

remedy Tenant's failure to surrender the premises in good order, reasonable wear and tear excepted. This work, even though some of it seems to have been begun before Tenant left the premises, was mostly undertaken thereafter. If Landlord's testimony is to be credited, none of the work was designed to enhance Tenant's use and enjoyment of the premises, but rather to put the property in proper shape for reletting. This work was not "repairs and renovations to the leased premises during the term" of the lease and does not qualify as additional rental. The claim for it, like the claim for septic tank work done after Tenant's departure, is not barred by res judicata.

## II.

We now address Tenant's second question. It concerns whether the Circuit Court for Anne Arundel County erred in remanding the case to the District Court for a new trial. We believe that the circuit court was correct in remanding the case, but not for a new trial.

In the circuit court Tenant argued that Landlord's evidence as to damages was in some instances simply insufficient; that is, it did not prove the elements required to demonstrate the proper measure of damages. He repeats this argument here. The circuit court could not respond to it in any meaningful way because it was impossible to tell from the record for what claims the District Court had awarded damages. That court simply entered a lump sum judgment for some $3,000 less than the total amount sought by Landlord. We are faced with the same inadequacy of record.[13]

We sympathize with the circuit court's frustrations. As an appellate court hearing an appeal on the record, it should not have to sort through the evidence and engage in speculation as to which claims the District Court had allowed in whole or in part, and why it had done so, especially since

---

**13.** Landlord filed no brief in this Court, so we are without the benefit of his views on these matters.

some of the District Court's determinations may have been based on witness credibility. We should not have to do so either. *See Spessard v. Spessard,* 64 Md.App. 83, 89–90, 494 A.2d 701, 704–705 (1985) (remand for clarification of trial court's factual determination); *see also Real Estate Central v. Kramer,* 254 Md. 290, 293, 255 A.2d 81, 83 (1969) (due regard must be given to trial judge's opportunity to judge credibility of witnesses); *Hale v. Hale,* 74 Md.App. 555, 569, 539 A.2d 247, 254, *cert. denied,* 313 Md. 30, 542 A.2d 857 (1988) (same). But this does not mean that the circuit court should have ordered a full new trial, which would permit Landlord to make up any insufficiency of proof at the first trial.

Landlord has had one full and fair opportunity to prove the measure of the damages he claimed in the second action; he complains of no error below, and under the circumstances of this case, he is not entitled to another opportunity. The circuit court should have remanded under Md. Rule 1370 b, with directions to the District Court to review the evidence before it and to make specific findings of fact to support any damages it awards.[14]

## III.

For the reasons we have stated, we reverse the judgment of the Circuit Court for Anne Arundel County. This case must be returned to the District Court for further proceedings. In the course of those proceedings, the District Court is to exclude from its computation of damages any amounts sought for installation of the well and for the water conditioning system. Tenant is not liable for those claims, as we point out in Part I.D. of this opinion. To the extent that the District Court finds (after taking additional testimony, if necessary, on the limited issue) that any part of the amount

---

**14.** In order to facilitate proper appellate review in cases involving many elements of damage, it would be appropriate for a trial court to itemize its award, setting forth each item for which an award is given, and the value assigned that item by the court.

claimed for septic tank work qualifies as "rent" under the criteria we have explained in Part I.D., that part of the claim is barred by res judicata.

As to the remaining claims, the District Court is to consider the evidence already before it, make findings of fact as to the evidence supporting each claim, determine whether those facts are sufficient to support each claim, and if so, in what amount, and then enter judgment for Landlord for any sum so supported.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED WITH DIRECTIONS TO REMAND, WITHOUT AFFIRMANCE OR REVERSAL, TO THE DISTRICT COURT OF MARYLAND SITTING IN ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.