19 A.3d 927

Katie McDANIEL

v.

Tom BARANOWSKI.

No. 64, Sept. Term, 2010.

Court of Appeals of Maryland.

May 4, 2011.

Lisa Marie Sarro (Legal Aid Bureau, Inc., Annapolis, MD), on brief, for petitioner.

Robert B. Greenwalt, Baltimore, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

In this case, we are asked to consider whether the owner of a "multiple dwelling"[1] in Brooklyn Park, who has failed to obtain a license for the premises, as mandated by Section 11-10-102 of the Anne Arundel County Code,[2] may nevertheless initiate summary ejectment proceedings for a tenant's failure to pay rent, pursuant to Section 8-401 of the Real Property Article, Maryland Code (1974, 2003 Repl.Vol., 2009 Supp.).[3]

---

1. Section 15-4-202 of the Anne Arundel County Code (2005, 2009 Supp.) defines a "multiple dwelling" as follows:

   **Multiple dwelling.** A structure containing more than two dwelling units or a non-owner occupied dwelling containing two or more dwelling units.

2. Section 11-10-102 of the Anne Arundel County Code (2005, 2009 Supp.) provides:

   A person may not operate a multiple dwelling or rooming house without a license issued by the Department. A separate license is required for each multiple dwelling or rooming house.

3. Section 8-401 of the Real Property Article, Maryland Code (1974, 2003 Repl.Vol., 2009 Supp.), states, in relevant part:

   (a) *Right to repossession.*—Whenever the tenant or tenants fail to pay the rent when due and payable, it shall be lawful for the landlord to have again and repossess the premises.

   (b) *Complaint; summons.*—(1) Whenever any landlord shall desire to repossess any premises to which the landlord is entitled under the provisions of subsection (a) of this section, the landlord or the landlord's duly qualified agent or attorney shall file the landlord's written complaint under oath or affirmation, in the District Court of the county wherein the property is situated:

   (i) Describing in general terms the property sought to be repossessed;

   (ii) Setting forth the name of each tenant to whom the property is rented or any assignee or subtenant;

   (iii) Stating the amount of rent and any late fees due and unpaid;

   (iv) Requesting to repossess the premises and, if requested by the landlord, a judgment for the amount of rent due, costs, and any late fees; . . . .

   All references to the Real Property Article throughout are to Maryland Code (1974, 2003 Repl.Vol., 2009 Supp.), in effect at the time the events in question occurred, unless otherwise noted.

Before us, the tenant, Katie McDaniel, dispossessed of the premises by the District Court, asks us to consider the following questions on certiorari, *McDaniel v. Baranowski,* 415 Md. 337, 1 A.3d 467 (2010), which we have renumbered:

1. Did the District Court err by striking tenant's appeal as untimely in an action pursuant to § 8–401 of the Real Property Article where the tenant filed a timely post-judgment motion under Maryland Rule 3–535, and the District Court subsequently heard the case on the merits and then issued judgment?

2. Did the District Court err as a matter of law in granting possession to the landlord on his claim under Real Property Article § 8–401 because the landlord's failure to obtain a license to rent the property precluded him from using the courts to enforce the rental agreement?

3. Did the District Court err as a matter of law by denying tenant's claims under the Consumer Protection Act where the uncontroverted evidence showed not only that the rental property at issue was unlicensed for rental use, but also that the property contained an electrical defect and other problems that affected and endangered the tenant on a daily basis throughout the majority of her tenancy?

We shall hold that a rental property owner who does not possess a current license to operate the premises, is not entitled to utilize the summary ejectment procedures outlined in Section 8–401 of the Real Property Article upon a tenant's failure to pay rent, if the dwelling is located in a jurisdiction that requires owners to obtain such licenses. We shall further hold that the District Court judge did not err in determining that the tenant did not demonstrate actual loss or injury due to the rental property owner's failure to obtain a license for the premises, and was, thus, not entitled to damages pursuant to the Consumer Protection Act.[4]

---

**4.** Section 13–303 of the Commercial Law Article, Maryland Code (1975, 2005 Rcpl.Vol.), states:

On March 9, 2009, Katie McDaniel, Petitioner, entered into a written lease with Tom Baranowski, Respondent, for the rental of a second-floor apartment in Brooklyn Park, in Anne Arundel County, the tenancy of which commenced a few days later, on March 12, 2009. Although McDaniel was not aware at the time, Baranowski had failed to obtain a license for the "multiple dwelling," defined in Section 15–4–202 of the Anne Arundel County Code (2005, 2009 Supp.), as "a non-owner occupied dwelling containing two or more dwelling units."

In Anne Arundel County, "[a] person may not operate a multiple dwelling ... without a license issued by the Department [of Inspections and Permits]," and "[a] separate license is required for each multiple dwelling...." Section 11–10–102. A license may not be issued, moreover, "without the approval of a Health Officer," who "shall approve the issuance of a license if an inspection ... reveals that the multiple dwelling ... complies with the requirements of [the Anne Arundel County Code]." Section 11–10–105(a). Those requirements are designed to insure the safety and habitability[5] of the

---

A person may not engage in any unfair or deceptive trade practice, as defined in this subtitle or as further defined by the Division [of Consumer Protection of the Office of the Attorney General], in:
(1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
(2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
(3) The extension of consumer credit; or
(4) The collection of consumer debts.
Section 13–408 of the Commercial Law Article, Maryland Code (1975, 2005 Repl.Vol.), provides in relevant part:
(a) *Actions authorized.*—In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.
(b) *Attorney's fees.*—Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

5. "Habitability" is described as "[t]he condition of a building in which inhabitants can live free of serious defects that might harm health and safety." Black's Law Dictionary 779 (9th ed.2009); *see also Williams v. Hous. Auth.*, 361 Md. 143, 146, 760 A.2d 697, 698 (2000) (describing

premises, namely that the dwelling is "clean, sanitary, fit for human occupancy, and in compliance with this title and other applicable State and County law." Section 15-4-103.

Although Baranowski had previously secured a license to lease the premises, that license had expired on January 31, 2005. Thereafter, the Anne Arundel County Department of Inspections and Permits Commercial Division contacted Baranowski on February 14, 2005, August 10, 2005, July 11, 2007, December 28, 2007, and on July 24, 2008, requesting that Baranowski renew his license to operate the premises in question. Baranowski finally reapplied for a rental license on May 21, 2009, after he had initiated summary ejectment proceedings against McDaniel.

Before moving into the apartment, McDaniel had paid Baranowski the first month's rent of $650, as well as a security deposit of $650. Upon taking possession, after putting the utilities in her name, McDaniel discovered various problems involving the fuse box, which was "sizzling and sparking." Specifically, when the fuse box sparked, the power in the apartment would shut off. McDaniel contacted Baltimore Gas and Electric and was directed to contact the fire department, whose personnel, upon assessing the situation, advised her to vacate the apartment. She, nevertheless, stayed in the apartment because she "had nowhere to go." Although McDaniel did contact Baranowski, who had sent a maintenance person on more than one occasion, the problems with the fuse box persisted, happening "every day, quite a few times" per day, with the power shutting off each time for "one to two minutes." It was not until the weekend of May 22nd when Baranowski hired a professional electrician to repair the problem, that the fuse box was fixed, a week before the trial in the present case commenced.

_____

the warranty of habitability as an obligation of the landlord "to repair and eliminate conditions and defects that constitute, or, if uncorrected, would constitute, a serious and substantial threat to the life, health, or safety of the occupants").

According to McDaniel, other aspects of the apartment also were in disrepair, including two windows that had fallen out of their frames, hitting McDaniel and her young daughter on the head on separate occasions. In addition, the kitchen windows were missing locks, and the kitchen countertop was loose, unglued to the cabinet on which it sat.

McDaniel also had contacted the Anne Arundel County Department of Health, and an inspector was dispatched to inspect the premises in mid-April. The inspector issued a letter to Baranowski dated April 22, 2009, notifying him of numerous Code violations involving the poor condition of the windows, kitchen countertop, and electrical system.[6]

---

6. The letter provided that the inspection revealed numerous Code violations and mandated that the violations be corrected by May 16, 2009, to avoid civil citations ranging from "$125.00 to $1,000 per day per violation":

> An inspection of the above referenced dwelling was conducted on April 16, 2009 in response to a complaint received by this Department. During that inspection, the following violations of Article 15, Title 4, Construction and Property Maintenance Codes were observed:
> *2nd Floor*
> • **The entrance door to the unit is in disrepair as the top hinge is loose.**
> • **The kitchen window and the left living room window come out too easily.**
> • **The kitchen cabinet door hinge is loose.**
> • **The cabinet top by the stove is detached.**
> • **The fuse box door is off.**
> • **2 window screens are torn and 2 are missing.**
> • **The electrical system is in disrepair due to the electricity periodically shutting off while the breakers remain on.**
> **The electrical system must be repaired to a safe and approved manner. The electrical system must be properly wired and installed. The system must be repaired in accordance with the County Electrical Code. Permits must be obtained.**
> • **The kitchen sink backs up on occasion.**
> The plumbing waste line shall be repaired so that it functions properly and shall be kept free from obstructions, leaks, and defects. It is recommended that a licensed professional be utilized.
> The violations must be corrected by **May 16, 2009.** If the violations are not corrected at that time and further re-inspections are needed, you will be charged $80.00 for each subsequent re-inspection. In addition, civil citations may be issued for each day the violations

Throughout all of this, McDaniel did not pay any rent, after the $1,300 she had initially paid for the first month's rent and the security deposit. She apparently vacated the apartment on or about June 1, 2009.

On April 16, 2009, Baranowski filed a "Complaint for Repossession of Rented Property under Real Property § 8–401" in the District Court of Maryland, Anne Arundel County, against McDaniel, for failure to pay rent that was due April 12th. McDaniel was present when the case was heard on April 23, 2009, and the District Court judge awarded possession of the premises to Baranowski and entered judgment in the amount of $707.50 in rent and late fees.[7]

McDaniel was scheduled to be evicted on May 15, 2009, but was granted an extension to remain on the premises until May 19th. That day, after securing representation from the Legal Aid Bureau, she filed an "Emergency Motion to Stay Eviction and to Revise Judgment, and Request for Rent Escrow," alleging that the District Court had erroneously entered judgment "[b]y consent" when in actuality, McDaniel, who at that time was pro se, had asserted at the hearing that the premises "contained serious and substantial defects" and also had requested "the remedy of rent escrow." [8]

---

continue to exist. Those fines can range from $125.00 to $1,000 per day per violation.

7. We do not address the effect of the lack of a license on a breach of contract claim brought by the landlord, because the issue was not raised in the Petition for Certiorari.

8. Section 8–211 of the Real Property Article, governing "repair of dangerous defects," provides, in relevant part:

(a) *Purpose.*—The purpose of this section is to provide tenants with a mechanism for encouraging the repair of serious and dangerous defects which exist within or as part of any residential dwelling unit, or upon the property used in common of which the dwelling unit forms a part. The defects sought to be reached by this section are those which present a substantial and serious threat of danger to the life, health and safety of the occupants of the dwelling unit, and not those which merely impair the aesthetic value of the premises, or which are, in those locations governed by such codes, housing code violations of a nondangerous nature. . . .

Prior to the filing of the "Emergency Motion to Stay Eviction and to Revise Judgment," Baranowski had filed a second complaint for repossession of the premises against McDaniel on May 13, 2009, for failure to pay rent due May 12th. Through counsel, in response, McDaniel filed a "Notice of Intention to Defend and Counterclaim," in which she alleged that the lease was void or voidable as against public policy, because Baranowski had failed to obtain a license for the premises, as well as that Baranowski had breached the implied warranty of habitability, and violated the Consumer Protection Act; McDaniel also requested a rent escrow. In support of her claim that the lease was void or voidable as against public policy, McDaniel alleged the following:

### COUNT ONE
### (Recovery of Money Paid Under Void Lease)

1. Tenant and the Plaintiff, Mr. Thomas Baranowski (hereinafter, "Landlord"), entered into a purported lease of the real property at 5210 Brookwood Road, Second Floor, Brooklyn Park, Maryland 21225 (the "Property"), on or about March 12, 2009.

2. On or about March 12, 2009, in consideration of the purported lease, Tenant paid Landlord a total of $1,300.00, representing $650 for the first month's rent and a $650 security deposit. Landlord presently retains this sum.

---

(b) *Sanctions and repair consistent with public policy.*—It is the public policy of Maryland that meaningful sanctions be imposed upon those who allow dangerous conditions and defects to exist in leased premises, and that an effective mechanism be established for repairing these conditions and halting their creation.

\* \* \*

(j) *Relief—In general.*—(1) Whether the issue of rent escrow is raised affirmatively or defensively, the tenant may request one or more of the forms of relief set forth in this section.

(2) In addition to any other relief sought, if within 90 days after the court finds that the conditions complained of by the tenant exist the landlord has not made the repairs or corrected the conditions complained of, the tenant may file a petition of injunction in the District Court requesting the court to order the landlord to make the repairs or correct the conditions.

3. The Property is a "multiple dwelling" under Anne Arundel County Code, § 15–4–201[sic] (2005, Feb. 2009 Supp.) ("County Code"), as supplemented by the Construction & Property Maintenance Code Supplement, because it is a "non-owner occupied dwelling containing two or more dwelling units."

4. Under County Code, § 11–10–102, "[a] person may not operate a multiple dwelling or rooming house without a license issued by the Department [of Inspections and Permits]."

5. On information and belief, Landlord does not have a current license to operate the Property as a multiple dwelling, nor did he have such a license at the time the purported lease was executed.

6. Because County law prohibits Landlord from operating the Property as a multiple dwelling, the purported lease of the Property is void or voidable as an illegal contract and/or as against the public policy of Anne Arundel County and the State of Maryland.

McDaniel further alleged that Baranowski had breached the implied warranty of habitability as follows:

COUNT TWO
(Breach of Implied Warranty)

7. Tenant incorporates the allegations of the foregoing Paragraphs 1–6.

8. The Property contains serious and substantial defects that are a hazard to human life and health. These defects include a serious electrical problem, whereby the circuit breaker box sparks and the power to the dwelling goes out intermittently, while failing to trip the electrical breakers, causing a fire hazard.

9. As such, the Property is not presently habitable.

10. Landlord knew, or should have known, of the dangerous defects in the Property at the time the purported lease was executed.

11. Landlord knew, or should have known, at the time the purported lease was executed, that he was not legally permitted to operate the Property as a multiple dwelling.

12. By proffering a residential lease to Tenant, Landlord impliedly warranted that the Property was habitable as a residence, and further impliedly warranted that he was authorized to rent the Property.

13. By entering into the purported lease under the circumstances, Landlord breached the aforementioned implied warranties.

Additionally, McDaniel alleged that Baranowski had violated the Consumer Protection Act by failing to provide a safe and habitable living environment:

COUNT THREE
(Violation of the Consumer Protection Act)

14. Tenant incorporates the allegations of the foregoing Paragraphs 1–12.

15. By making the aforesaid implied warranties in connection with the lease of the Property, when he knew or should have known that they were false, Landlord engaged in unfair or deceptive trade practice in violation of the Consumer Protect Act ("CPA"), §§ 13–101 *et seq.* of the Maryland Code, Commercial Law Article (2005 Repl.Vol., 2008 Supp.) ("C.L.").

16. C.L. § 13–408 authorizes an action for damages for violation of the CPA.

Finally, McDaniel alleged that she was entitled to abate rent, because she had informed Baranowski of the "substantial electrical defect," and he had failed to timely correct the problem:

COUNT FOUR
(Request for Rent Escrow)

17. Tenant incorporates the allegations of the foregoing paragraphs 1–16.

18. Landlord has had actual notice of the substantial electrical defect in the Property since at least on or about

March 21, 2009, when Tenant informed Landlord by telephone of the defect. The defect was also cited in a letter dated April 22, 2009 to Landlord from an inspector with the Anne Arundel County Department of Health.

19. Section 8–211(i) of the Maryland Code, Real Property Article (2003 Repl.Vol., 2008 Supp.) ("R.P.") authorizes a tenant to "refuse to pay rent and raise the existence of [serious and substantial] defects or conditions as an affirmative defense to . . . any complaint proceeding brought by the landlord to recover rent or the possession of the leased premises."

20. Relief under R.P. § 8–211 is conditioned upon proper notice to the landlord, reasonable time to correct defects, and "[p]ayment by the tenant, into court, of the amount or rent required by the lease, unless this amount is modified by the court. . . ." R.P. § 8–211(k).

21. Landlord has had sufficient notice under the statute and reasonable time to correct defects. *See* R.P. § 8–211(g)(2)–(3), (h).

McDaniel requested that the District Court dismiss Baranowski's complaint and sought $1,300 in damages (the amount of her first month's rent and security deposit). She further requested that the District Court abate her rent until Baranowski had made repairs to the premises. McDaniel also contemporaneously filed a "Motion to Consolidate" Baranowski's April and May complaints, which the court granted.

At a hearing on the consolidated cases on May 29, 2009, the District Court Judge denied McDaniel's Motion to Revise the April judgment, denied her counterclaims, and entered judgment in favor of Baranowski for possession of the property, as well as for May rent with concomitant late fees, determining that Baranowski's failure to obtain a license for the premises did not preclude his summary ejectment action and that McDaniel had failed to prove actual injury under the Consumer Protection Act:

> [The cases] [t]alk about damage to the consumer. Look at actual loss or injury caused by the unfair or deceptive

trade practice. . . . And what I find is that the failure to get a license in this case, [ ] I don't find it to be void. . . . [The] tenant basically agreed that everything has finally been fixed. It would be nice to have a letter from the county that they're satisfied. . . .

So what I'm doing today is, in the April [complaint], motion for rent escrow is denied. Motion to revise judgment is denied. Motion to stay eviction, order staying eviction as to June 1, 2009 is affirmed.

In the case for May's rent, I enter judgment in favor of the landlord for six hundred eighty-two dollars and fifty cents. Counter claim is denied. And in that case, both sides are advised that they have four days to appeal.

The Judge did grant McDaniel's motion to stay the eviction until June 1, 2009; McDaniel appealed the various adverse judgments.

Regarding McDaniel's appeal of the April judgment of repossession, the court struck the appeal as "not timely filed," but allowed the appeal involving the monetary judgment entered in the consolidated cases. Thereafter, McDaniel filed a "Motion for Reconsideration," asserting that her "Emergency Motion to Stay Eviction and to Revise Judgment," filed on May 19, 2009, was timely in connection with the judgment of repossession, entered on April 28, 2009. Specifically, McDaniel argued that the motion was filed pursuant to Rule 3–535, describing the District Court's "revisory power," which provides that "[o]n motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and may take any action it could have taken under Rule 3–534 [governing motions to alter or amend a judgment]." The District Court denied the motion.

Although McDaniel filed an appeal in the Circuit Court regarding the rental amount and alleged damages to her, Baranowski's failure to obtain a license for the premises and the availability of a summary ejectment was not pursued, because McDaniel had "moved out of the property" by the time of the hearing. In a memorandum opinion, the Circuit

Court affirmed the decision of the District Court regarding back rent and concomitant late fees due Baranowski and also the denial of McDaniel's Consumer Protection Act claim, reasoning that she had failed to present any evidence of "actual injury" as required by the Act.

■ As a threshold matter before us, McDaniel asserts that the District Court erred in striking her appeal regarding the judgment of repossession entered on April 28, 2009. McDaniel contends that the May 29, 2009 hearing, in which the District Court considered both of Baranowski's complaints, amounted to a "new trial on the April [repossession] case," such that her appeal was timely. Alternatively, McDaniel suggests that her appeal in connection with the repossession judgment was timely, because she had filed a timely "Motion to Revise Judgment," pursuant to Rule 3–535(a),[9] asking the District Court to "[v]acate the judgment of possession," because Baranowski had failed to repair the "serious electrical problem," as well as a host of other defects in the unit.

The issue regarding the appealability of the Motion to Revise Judgment requires only cursory review, because we have previously indicated that a motion to revise judgment "clearly is subject to appellate review." *Southern Management Corp. v. Taha*, 378 Md. 461, 495, 836 A.2d 627, 647 (2003).[10] Therefore, an appeal from the timely post-judgment

---

**9.** Rule 3–535(a), governing "revisory power," states:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and may take any action that it could have taken under Rule 3–534.

**10.** In *Southern Management Corp. v. Taha*, 378 Md. 461, 836 A.2d 627 (2003), we considered the scope of a circuit court's power under Rule 2–535(a), which is nearly identical to Rule 3–535(a), although applicable to the circuit court rather than the district court:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

Rule 3–535(a), governing the revisory power of a district court, provides:

motion to revise the dispossession and denial of damages judgment was appropriate.

■ Our focus in the present case is whether a rental property owner in Anne Arundel County, who does not possess at the relevant times a license to operate the rental premises as mandated by the County Code, may nevertheless initiate summary ejectment proceedings, should a tenant fail to pay rent. McDaniel asserts that because Baranowski undisputably failed to comply with the licensing requirements of Section 11–10–102 of the Code, he should "not be permitted to reap the benefits" of the streamlined repossession process outlined in Section 8–401 of the Real Property Article. McDaniel further argues that the county ordinance "is a public health and safety measure," designed to safeguard tenants and insure the habitability of rental properties. Baranowski counters that because Section 8–401 contains no explicit requirement that a landlord "be licensed by local authority in order to recover possession of premises when the tenant fails to pay rent," he should be permitted to initiate and maintain a summary ejectment.

■ The legal relationship between landlord and tenant is governed by the contract between the parties, *Delauter v. Shafer*, 374 Md. 317, 822 A.2d 423 (2003), *Village Green Mutual Homes v. Randolph*, 361 Md. 179, 760 A.2d 716 (2000), as well as any statutory authority. Statewide provisions "relating to landlords and tenants" are found in Title 8 of the Real Property Article,[11] enacted as a comprehensive framework to "correct existing inconsistencies in the law," as well as "improve the efficiency and effectiveness of resolving disputes

---

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and may take any action that it could have taken under Rule 3-534.

11. Title 8 of the Real Property Article was enacted by Chapter 12 of the Maryland Laws of 1974, and was subsequently reenacted by Chapter 649 of the Maryland Laws of 1999.

between landlords and tenants." [12] *Commission to Review Landlord–Tenant Laws, Letter of Transmittal* (1998).

Section 8–401(a) of that statutory scheme recognizes that a landlord has the right of possession of the premises, once a tenant fails to pay rent:

(a) *Right to repossession.*—Whenever the tenant or tenants fail to pay rent when due and payable, it shall be lawful for the landlord to have again and repossess the premises.

The aggrieved landlord need only file a verified complaint for repossession in the District Court, alleging title to the premises, the name of each tenant, and the amount of rent due and owing, after which a hearing is held expeditiously, upon notice to the tenant by mail:

(b) *Complaint; summons.*—(1) Whenever any landlord shall desire to repossess any premises to which the landlord is entitled under the provisions of subsection (a) of this

---

**12.** The comprehensiveness of Title 8 is evinced in the purpose statement of the

For the purpose of revising provisions of law relating to landlords and tenants; clarifying the rent escrow procedures to be followed in certain landlord-tenant actions; providing miscellaneous requirements for lease option agreements, security deposits, landlords' receipts, and residential leases; clarifying the procedures to be followed in instances of retaliatory evictions; authorizing the court to award certain late fees and additional accruing installments of rent in certain summary ejectment actions; authorizing the court to enter judgments for unpaid rent under certain circumstances in certain tenant holding over actions; authorizing a tenant who has not been personally served with a summons to make a limited appearance in certain landlord-tenant actions without becoming subject to the personal jurisdiction of the court; providing that the acceptance of payment under certain circumstances shall not constitute a waiver of certain rights absent a specific written agreement to the contrary; defining certain terms; establishing procedures to be followed in wrongful detainer actions; establishing procedures to be followed where the title to real property is claimed to be disputed in a landlord-tenant action; clarifying the procedures to be followed when a party in certain landlord-tenant actions elects a trial by jury; authorizing the court to exercise injunctive powers in certain landlord-tenant actions; making technical and stylistic changes; and generally relating to the rights and obligations of landlords and tenants and actions involving landlords and tenants.

1999 Md. Laws, Chap. 649.

section, the landlord ... shall file the landlord's written complaint under oath or affirmation, in the District Court of the county wherein the property is situated;

(i) Describing in general terms the property sought to be repossessed;

(ii) Setting forth the name of each tenant to whom the property is rented or any assignee or subtenant;

(iii) Stating the amount of rent and any late fees due and unpaid;

(iv) Requesting to repossess the premises and, if requested by the landlord, a judgment for the amount of rent due, costs, and any late fees;

* * *

(2) For the purpose of the court's determination under subsection (c) of this section the landlord shall also specify the amount of rent due for each rental period under the lease, the day that the rent is due for each rental period, and any late fees for overdue rent payments.

(3) The District Court shall issue its summons, directed to any constable or sheriff of the county entitled to serve process, and ordering the constable or sheriff to notify the tenant, assignee, or subtenant by first-class mail:

(i) To appear before the District Court at the trial to be held on the fifth day after the filing of the complaint; and

(ii) To answer the landlord's complaint to show cause why the demand of the landlord should not be granted.

(4)(i) The constable or sheriff shall proceed to serve the summons upon the tenant, assignee, or subtenant or their known or authorized agent as follows:

1. If personal service is requested and any of the persons whom the sheriff shall serve is found on the property, the sheriff shall serve any such persons; or

2. If personal service is requested and none of the persons whom the sheriff is directed to serve shall be found on the property and, in all cases where personal service is not

requested, the constable or sheriff shall affix an attested copy of the summons conspicuously upon the property. (ii) The affixing of the summons upon the property after due notification to the tenant, assignee, or subtenant by first-class mail shall conclusively be presumed to be a sufficient service to all persons to support the entry of a default judgment for possession of the premises, together with court costs, in favor of the landlord, but it shall not be sufficient service to support a default judgment in favor of the landlord for the amount of rent due.

Repossession, once judgment is obtained, is *swift*, if the tenant fails to comply with the dictates of the court order, should the landlord prevail:

(d) *Removal of tenant for noncompliance with judgment in favor of landlord; stay of execution of warrant of restitution.*—(1)(i) Subject to the provisions of paragraph (2) of this subsection, if judgment is given in favor of the landlord, and the tenant fails to comply with the requirements of the order within 4 days, the court shall, at any time after the expiration of the 4 days, issue its warrant, directed to any official of the county entitled to serve process, ordering the official to cause the landlord to have again and repossess the property by putting the landlord ... in possession thereof, and for that purpose to remove from the property, by force if necessary, all the furniture, implements, tools, goods, effects or other chattels of every description whatsoever belonging to the tenant, or to any person claiming or holding by or under said tenant.

\*    \*    \*

(2)(i) The administrative judge of any district may stay the execution of a warrant of restitution of a residential property, from day to day, in the event of extreme weather conditions. (ii) When a stay has been granted under this paragraph, the execution of the warrant of restitution for which the stay has been granted shall be given priority and completed within 3 days after the extreme weather conditions cease.

It is obvious that, in this truncated process, the landlord's entitlement to enforcement of his superior interest in the premises is a given, once the failure to pay rent is proven and appropriate notice is provided.

Licensure to operate the premises, however, is not mentioned anywhere in Section 8–401. None of its legislative history, either, assists our query regarding the need for a license to operate prior to initiating summary ejectment proceedings.[13] The definition of "landlord," codified at Section 1–

---

**13.** A review of the legislative history of Section 8–401 of the Real Property Article indicates that it was first enacted in 1937, when the General Assembly added several new sections to Article 53, Maryland Code (1935 Supp.), as follows:

24B.   Whenever the tenant under any demise or agreement of rental, express or implied, verbal or written, of lands or tenements, whether real estate or chattels real within the State of Maryland, shall fail to pay rent thereunder when due and payable, it shall be lawful for the lessor to have again and repossess the premises so rented.

24C.   Whenever any lessor shall desire to have again and repossess any premises to which he is entitled under the provisions of the preceding section, he or his duly qualified agent or attorney, shall make his written complaint under oath or affirmation, before any justice of the peace of the county or city wherein such property is situated, and describing therein in general terms the property sought to be had again and repossessed as aforesaid, and also setting forth the name of the tenant to whom the same is rented, or his assignee or under tenant or tenants, with the amount of rent thereon due and unpaid; and praying by warrant to have again and repossess the premises together with judgment for the amount of rent due and costs; . . . .

24D.   If at the trial on the second day aforesaid, the justice of the peace shall be satisfied the interest of justice will be better served by an adjournment to enable either party to procure his necessary witnesses, he may adjourn the trial for a period not exceeding one day, except by consent of all parties . . . .

24E.   In case judgment shall be given in favor of said lessor in the manner aforesaid, and the tenant shall fail to comply with the requirements of said order within two days aforesaid, the said justice of the peace shall, on or at any time after the expiration of said two days, issue his warrant, directed to any constable of the county or city wherein such complaint has been filed, that the lessor may elect, ordering him to cause said lessor to have and repossess said premises . . . .

24F.   The tenant may appeal from the judgment of the justice of peace to the Circuit Court for any county or the Baltimore City Court,

101(g) of the Real Property Article and applicable to its entirety, as well as prior iterations of the definitional provision, are also of no assistance in the present inquiry.[14]

What is helpful is a review of Section 8–208 of the Real Property Article, the purpose of which was to define which leases must be in writing and their terms. Section 8–208 of the Real Property Article was enacted in 1974 in response to the recommendations of the Governor's Landlord–Tenant Laws Study Commission,[15] and provided:

---

as the case may be, at any time within two days from the rendition of such judgment; . . . .
1937 Md. Laws, Chap. 529. The statute was renumbered, but remained essentially unchanged until 1971, when the Legislature amended then Section 39-O of Article 53, Maryland Code (1957, 1968 Repl.Vol., 1970 Supp.), to require that a tenant be notified by "first class mail" if a complaint for summary ejectment had been filed against him. 1971 Md. Laws, Chap. 745. In 1972, former Sections 39N through 39R of Article 53, Maryland Code (1957, 1968 Repl.Vol.), were repealed and reenacted without substantive change as Section 8-401 of the Real Property Article. 1972 Md. Laws, Chap. 349. In 1975, the Legislature extended the time period, from two days to five days, from the filing of the landlord's complaint to the trial. 1975 Md. Laws, Chap. 642. Thereafter, in 1978, the General Assembly repealed and reenacted former Section 8-401(b), Maryland Code (1974, 1977 Supp.), requiring personal service on the tenant for the entry of a money judgment for past due rent. 1978 Md. Laws, Chap. 450. In 1996, the Legislature amended former Section 8-401(d) of the Real Property Article, Maryland Code (1974, 1996 Repl.Vol.), increasing the number of days, from two to four, for a tenant to vacate the premises should the landlord prevail. 1996 Md. Laws, Chap. 586. And in 1999, the General Assembly clarified situations in which a landlord could collect back rent that had accrued after the filing of the initial complaint for repossession. 1999 Md. Laws, Chap. 649.

**14.** Section 1–101(g) defines "landlord" as follows:
"Landlord" means any landlord, including a "lessor."
A review of the legislative history of Section 1–101(g) indicates that the provision was enacted by Chapter 349 of the Maryland Laws of 1972, as follows:
(e) "Landlord" includes "lessor."
In 1974, the General Assembly repealed and reenacted former Section 1–101(e) of Article 21, Maryland Code (1957, 1973 Repl.Vol.), in its present iteration:
(g) "Landlord" means any landlord, including a "lessor."
1974 Md. Laws, Chap. 12.

**15.** The Commission was appointed by Governor Mandel in 1970, under

(a) *Prohibited provisions.*—No lease shall contain any of the following provisions:

(1) A provision whereby the tenant authorizes any person to confess judgment on a claim arising out of the lease.

(2) A provision whereby the tenant agrees to waive or to forego any right or remedy provided by applicable law.

(3) A provision providing for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent. . . .

(4) Any provision whereby the tenant waives his right to a jury trial.

(5) Any provision whereby the tenant agrees to a period required for landlord's notice to quit less than that provided by applicable law; provided, however, that neither party is prohibited hereby from agreeing to a longer notice than that required by applicable law.

(6) Any provision authorizing the landlord to take possession of the leased premises, or the tenant's personal property therein unless the lease has been terminated by action of the parties or by operation of law, and such personal property has been abandoned by the tenant without the benefit of formal legal process.

(b) *General provisions.*—(1) If any lease shall contain a provision calling for an automatic renewal of the lease term unless prior notice is given by the party or parties seeking to terminate the lease, any such provision shall be distinctly set apart from any other provision of the lease and provide a space for the written acknowledgment of tenant's agreement to the automatic renewal provision, except leases containing an automatic renewal period of one (1) month or less. Any such provision not specifically accompanied by either the tenant's initials, signature, or witnessed mark, shall be unenforceable by the landlord.

---

the Chairmanship of Judge Edgar P. Silver, pursuant to Resolution No. 46, to "produce practical legislation which would clarify the area of landlord-tenant law." *Interim Report of the Governor's Commission on Landlord–Tenant Law Revision, Letter of Transmittal* (1972).

(2) *No provision of this section shall be deemed to be a bar to the applicability of supplementary rights afforded by any public local law enacted by the General Assembly or any ordinance or local law enacted by any municipality or political subdivision of this State;* provided, however, that no such law can diminish or limit any right or remedy granted under the provisions of this section.

1974 Maryland Laws, Chapter 375 (emphasis added).[16] The current iteration of Section 8–208 contains similar language:

(f) *Supplementary rights afforded by local law or ordinance.*—No provision of this section shall be deemed to be a bar to the applicability of supplementary rights afforded by any public local law enacted by the General Assembly or any ordinance or local law enacted by any municipality or political subdivision of this State; provided, however, that no such law can diminish or limit any right or remedy granted under the provisions of this section.

The minutes of the Landlord–Tenant Laws Study Commission give insight into the types of local ordinances contemplated by the language of supplementary rights afforded by local ordinance. In at least one section of the Study Commission's meeting minutes, the Commission envisioned comprehensive habitability codes being enacted by local governments.[17] In fact, a licensure requirement to operate rental premises, addressing habitability concerns, was in existence in Anne Arun-

---

**16.** Former Section 8–208(b)(2) of the Real Property Article, Maryland Code (1974, 1998 Repl.Vol.), was renumbered by Chapter 649 of the Maryland Laws of 1999, but has remained otherwise unchanged.

**17.** The minutes of the November 17, 1970 meeting of the Governor's Landlord–Tenant Laws Study Commission provide, in pertinent part:

At present there is no statewide housing code. Indeed, there are many counties which have no housing codes. The purpose of such a statewide code would not be to replace any city's or county's code, but rather to provide a bare minimum in housing standards which would set a universal minimum standard. Safe heating, plumbing, electrical wiring and basic structural integrity should be the right of all Maryland tenants. Moreover, local governmental units should be encouraged to enact more comprehensive codes.

del County as early as 1967.[18]  Former Section 11A–1200 of the Anne Arundel County Code, (1967 Supp.), provided:

No person shall operate a multiple dwelling or rooming house unless he holds a current, unrevoked operating license issued by the department of inspections and permits with the concurrence of the health officer, in his name for the specific named multiple dwelling or rooming house.

The Study Commission also recognized the necessity of multiple dwelling licensing laws to insure the safety and habitability of rental premises.[19]

If, then, Section 8–208(f) recognizes the enforceability of local habitability ordinances, what should their effect be on the availability of summary ejectment? [20]  We have recognized in

18. The "legislative finding" in Bill No. 50–67 provided:

It is hereby found that there exist and may in the future exist, within Anne Arundel County, premises, dwellings, dwelling units, rooming units, or parts thereof, which by reason of their structure, equipment, sanitation, maintenance, use, or occupancy affect or are likely to affect adversely the public health, (including the physical, mental and social well-being of persons and families), safety, and general welfare. To correct and prevent the existence of such adverse conditions, and to achieve and maintain such levels of residential environmental quality as will protect and promote public health, safety, and general welfare, it is further found that the establishment and enforcement of minimum housing standards are required.

19. The Commission discussed the necessity for local ordinances requiring a license to operate rental premises:

At a time when our society carefully regulates and inspects fundamental consumer products and services (airplanes, cars, children's toys, foods, clothing, drugs, to name an obvious few), it seems strange that housing is largely exempt.  Multiple dwelling inspection and licensing laws, like fire escape laws for apartments and factories, grew out of some disastrous sweatshop and tenement fires around the turn of the century.  Surely we have progressed beyond that.

Governor's Landlord–Tenant Laws Study Commission, Minutes of the Commission's Meeting, Nov. 17, 1970.

20. To the extent that the language in the second clause of Section 8–208(f), which provides, "no such law can diminish or limit any right or remedy granted under the provisions of this section," could suggest that a landlord's ability to seek summary ejectment under Section 8–401 may not be defeated by a local habitability ordinance, this argument is without merit.  Section 8–208 enumerates several safeguards for residential tenants.  In particular, subsection (a) requires that any landlord

analogous contexts that the failure to obtain a license as required by local ordinance ordinarily renders the contract invalid and unenforceable. In *Berenter, Inc. v. Berman,* 258 Md. 290, 265 A.2d 759 (1970), we considered whether a contractor could enforce a mechanic's lien, when he was not licensed as required by the Maryland Home Improvement Law. In holding that the unlicensed contractor could not resort to a mechanic's lien, we reasoned that if a statute requiring a license for conducting a trade or business is "regulatory in nature for the protection of the public, rather than merely to raise revenue," a person who has neglected to obtain a license "will not be given the assistance of the courts" in enforcing the contract. *Id.* at 293, 265 A.2d at 761. In other words, once we determined that the purpose of the statute was to eliminate a perceived harm, rather than to build the public fisc, then we recognized that an unlicensed person should not be afforded the benefit of swift justice,[21] or the establishment of a mechanic's lien, which requires but a filing in court for its creation.[22]

---

who offers five or more units for rent must use a written lease, and Section 8–208(b) provides that a landlord must furnish a copy of the written lease to a prospective tenant upon request. Subsection (c) outlines mandatory lease provisions, including a statement that "the premises will be made available in a condition permitting habitation," and Section 8–208(d) contains numerous terms that a landlord may not insert in a residential lease. Finally, subsection (e) requires that a provision calling for an "automatic renewal" of the lease must be "distinctly set apart" and "provide a space for the written acknowledgment of the tenant's agreement." These statutory protections for the tenant may be supplemented, but cannot be diminished by any local law, as stated in Section 8–208(f).

21. We have also determined that the failure to obtain a license precluded the enforcement of a contract in proceedings regarded as other than "summary" in nature. *See Snodgrass v. Immler,* 232 Md. 416, 194 A.2d 103 (1963) (reasoning that an architect could not recover, in a breach of contract action, architectural fees for services rendered because he was not licensed as an architect as required by State law).

22. Recently, our colleagues on the intermediate appellate court considered the effect of lack of a building license on the enforceability of a construction contract in *Baltimore Street Builders v. Stewart,* 186 Md. App. 684, 975 A.2d 271 (2009), in which an unlicensed contractor

Former Section 19 of Article 63, Maryland Code (1957, 1968 Repl.Vol.), in effect at the time *Berenter* was decided, provided for the establishment of a mechanic's lien once the builder filed a petition in the circuit court containing cursory information, namely the contractor's name and address and a description of the work:

Every such claim shall set forth: First, the name of the party claimant and of the owner or reputed owner of the building, and also of the contractor or architect, or builder, when the contract was made by the claimant with such contractor, architect, or builder; second, the amount or sum claimed to be due and the nature or kind of work or the kind and amount of materials furnished and the time when the materials were furnished or the work done; thirdly, the locality of the building and the number and size of the stories of the same, or such matters of description as may be necessary to identify the same.[23]

---

sought to enforce a mechanic's lien when the property owner failed to pay the balance due for construction work and materials. The intermediate appellate court determined that because the contractor had failed to obtain a home improvement license, pursuant to a state statute designed to safeguard homeowners from unskilled builders, rather than merely raise revenue, the contractor could not enforce the contract through the expedited process of obtaining a mechanic's lien.

**23.** Present Section 9–105 of the Real Property Article, Maryland Code (1974, 2010 Repl.Vol.), governing the filing of mechanic's liens, is substantially similar and provides:

(a) *In general.*—In order to establish a lien under this subtitle, a person entitled to a lien shall file proceedings in the circuit court for the county where the land or any part of the land is located within 180 days after the work has been finished or the materials furnished. The proceedings shall be commenced by filing with the clerk, the following:

(1) A petition to establish the mechanic's lien, which shall set forth at least the following:

(i) The name and address of the petitioner;

(ii) The name and address of the owner;

(iii) The nature or kind of work done or the kind and amount of materials furnished, the time when the work was done or the materials furnished, the name of the person for whom the work was done or to whom the materials were furnished and the amount or sum claimed to be due, less any credit recognized by the petitioner;

As a builder cannot seek swift justice through the institution of a mechanic's lien if he is unlicensed to operate his business, so should a landlord not be able to seek to dispossess a tenant, summarily, without having a license to operate the leased premises as required by local ordinance.[24]

Whether, though, the landlord must establish his bona fides regarding licensure at the time of filing, as a matter of law, or whether the tenant should plead the lack of a license as an affirmative defense remains an issue. In this regard, we have characterized summary ejectment proceedings as substantively and procedurally limited, precluding complexity. We recognized this in *Shum v. Gaudreau*, 317 Md. 49, 562 A.2d 707 (1989), in which we considered whether a landlord's action for repossession of the premises and unpaid rent, pursuant to Section 8-401, precluded, by virtue of the doctrine of res judicata, a subsequent contract action by the landlord to recover for damage to the premises. In *Shum*, we determined that res judicata did not bar a subsequent suit for damages by a landlord, because "the relief available in a summary eject-

---

(iv) A description of the land, including a statement whether part of the land is located in another county, and a description adequate to identify the building; . . . .

**24.** In a similar vein, Section 8-208(d) of the Real Property Article acknowledges that particular lease terms may be rendered void and unenforceable as against public policy. Specifically, the Section prohibits lease terms that provide for indemnity by a tenant of a landlord for loss within the landlord's control as void against public policy. Present Section 8-208(d) was enacted by Chapter 789 of the Maryland Laws of 1976 to

provide that lease provisions that are void and against public policy under RP Article Section 8-105 cannot be placed in a lease. Real Property Article Section 8-105 currently provides that lease provisions seeking to exculpate a landlord from tort liability to persons injured in the common areas are void and against public policy; neither Section 8-105 nor Section 8-208, however, prohibit a lease from containing such a void provision. Even though such a clause is void under Section 8-105, it might deter a tenant from seeking redress for personal injuries if it is contained in a lease.

Letter from Steven G. Davison to Thomas J. Peddicord, Governor's Landlord-Tenant Laws Study Commission, Jan. 20, 1976. The Section was renumbered by Chapter 649 of the Maryland Laws of 1999, but has remained substantively unchanged.

ment action is limited to a judgment for repossession of premises and rent actually due":

> To accomplish the objective of speedy adjudication, our General Assembly, like legislatures in other states, limited a summary ejectment action to repossession of premises and rent actually due. The determination of the amount of rent due is often (although not always) a relatively straightforward calculation, and its recovery is not inconsistent with simple and speedy adjudication. *It would be contrary to the purpose of the summary ejectment statutory scheme to allow recovery of general contract damages, with possible complexities of proof, in a summary ejectment action.*

*Id.* at 59–60, 562 A.2d at 712 (emphasis added). In so holding, we emphasized that Section 8–401 would not afford "ample procedural means for fully developing the entire transaction," and therefore, the landlord's more complex contract claim was more appropriately heard in a separate action. *Id.* at 60, 562 A.2d at 713; *see Greenbelt Consumer v. Acme Mkts.*, 272 Md. 222, 229, 322 A.2d 521, 525 (1974) (describing summary ejectment as one of several "possessory in rem or quasi in rem actions that provide[ ] a means by which a landlord [may] rapidly and inexpensively obtain repossession of his premises. . . ."); *Law Offices of Taiwo Agbaje v. JLH Props., II, LLC,* 169 Md.App. 355, 370, 901 A.2d 249, 258 (2006) (reasoning landlord's request for attorney's fees was not cognizable in a summary ejectment proceeding, because "such a complex factual inquiry would frustrate the expedited design of the summary ejectment statute"). As a result, the summary ejectment proceedings could become enmeshed in complexity, were the tenant to have to plead and prove the *absence* of a license to operate the rental property on the part of the landlord.

■ The summary ejectment procedure itself is mired in the superior title of the landlord to the leased premises, once nonpayment occurs, because it only requires that the landlord describe "the property sought to be repossessed," "the name of each tenant," and "the amount of rent and any late fees due and unpaid," in making the landlord's prima facie case war-

ranting summary ejectment. Licensure under local ordinances in order to operate rental dwelling units is an integral part of a landlord's status as claimant in those jurisdictions that require licensure. As a result, in order to invoke the facile process of summary ejectment, a landlord in those jurisdictions requiring licensure, must affirmatively plead and demonstrate that he is licensed at the time of the filing of the complaint for summary ejectment in order to initiate the summary ejectment process.

■ With respect to the damages to which McDaniel claims entitlement under the Consumer Protection Act, McDaniel argues that the District Court erred in denying her claim because she failed to prove actual damages. In *CitaraManis v. Hallowell,* 328 Md. 142, 613 A.2d 964 (1992), we considered whether a tenant, pursuant to the Consumer Protection Act, could obtain restitution of rent paid for premises that were not licensed as required by a local housing code, after the tenant only proved lack of licensure. In the case, the CitaraManises had not alleged nor proved that the house they had rented "was unclean, unsafe, uninhabitable or unsuitable in any regard," or that they had suffered any diminution of the rental value of the property as a result of the lack of licensure. In our analysis of the implications of these omissions, we contrasted the situation with that in *Golt v. Phillips,* 308 Md. 1, 517 A.2d 328 (1986), in which the tenant was forced to move to another apartment, because the unit he had rented from an unlicensed landlord contained numerous housing code violations, including no toilet facilities in Golt's apartment, defective door locks, and the lack of fire exits and fire doors. Golt demonstrated actual injury, in both the diminution of value of the premises due to defects in the unit, which did not even have toilet facilities, and also in the cost of securing suitable substitute housing. *See also Galola v. Snyder,* 328 Md. 182, 613 A.2d 983 (1992) (reasoning tenant was required to prove actual loss or injury stemming from the lack of licensure).

The present case is analogous to *CitaraManis,* because McDaniel failed to present any evidence that she sustained

any actual damages, such as bills for medical treatment, loss of wages, or the cost of securing suitable substitute housing, for example. Therefore, we agree with the District Court that McDaniel failed to prove actual loss or injury, a prerequisite to recovery under the Consumer Protection Act.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REGARDING THE CONSUMER PROTECTION ACT CLAIM AFFIRMED. JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IN DIST. CT. CASES 297200012177 AND 297200010105 AFFIRMED IN PART AND REVERSED IN PART: AFFIRMED AS TO BACK RENT AND REVERSED AS TO THE LANDLORD'S POSSESSION OF THE PREMISES. DISTRICT COURT CASES 297200012177 AND 297200010105 REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS PERTAINING TO POSSESSION OF THE PREMISES AND REMAND THE CASES TO THE DISTRICT COURT WITH DIRECTIONS TO DISMISS THE SUMMARY EJECTMENT ACTIONS. COSTS TO BE PAID BY THE RESPONDENT.

